### R. E. Jones & Company v. Northern Assurance Company, Limited.

(Decided January 14, 1919.)

### Appeal from Warren Circuit Court.

1. Arbitration and Award—Validity of Award.—Arbitrators must be disinterested and impartial, but the rule does not go to the extent of invalidating an award where the arbitrators are merely zealous for what they conceive to be the rights of the parties.

2. Arbitration and Award—Qualification of Arbitrator.—One other-
wise qualified to act as arbitrator between an insurance com-
pany and the insured, is not disqualified by the fact that he does
not live in the same community or town in which the fire oc-
curred, but lives some fifty or one hundred miles away in a town
of like character and size and is acquainted with the conduct of
like business.

3. Arbitration and Award—Evidence.—Arbitrators can not hear ex-
traneous evidence in the absence of the parties to the contro-
versy, or of timely notice of intention to hear evidence without
violating the general rule; but where one of the parties to the
controversy selects as arbitrator a material witness and this
arbitrator gives evidence before the Board of Arbitration, the
board may allow a witness on the other side of the controversy
to give extraneous evidence without committing such prejudicial
error as would void the award.

4. Equity—Submission of Issue to Jury.—Where the question is one
peculiarly cognizable in equity, the chancellor may determine it
without the intervention of a jury, and if an issue out of chan-
cery be granted, in such case the verdict of the jury will be
advisory only.

5. Trial—Motion to Transfer Action.—Where a case is properly on
the equity docket and is fully prepared by taking all evidence in
depositions before a motion is made to transfer the cause to the
common law docket for a trial of a question of fact, the motion
to transfer is properly overruled.

SIMS, RODES & SIMS and G. DUNCAN MILLIKEN for appellants.

T. W. & R. C. P. THOMAS and GORDON & LAURENT for ap-
pellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The partnership firm of R. E. Jones & Company,
composed of R. E. Jones and E. H. Adams, was engaged
in general merchandising in Bowling Green, in 1914 and
1915. In the first year appellees, Northern Assurance
Company, Ltd., of London, England, New Hampshire
Fire Insurance Company, Scottish Union & National In-
surance Company, Citizens Insurance Company of Mis-
souri, and Great Southern Fire Insurance Company, in
five several policies for different sums insured the stock
of goods of appellants against loss by fire. In February,
1915, and while said policies were in force the store house
was damaged and a large part of its contents was de-
stroyed and the remainder, more or less, damaged by
fire. Each of the policies contained an arbitration
clause, and shortly after the fire an arbitration agree-

ment was duly executed between the insured and the aforesaid five companies, and arbitrators were selected, one by the insured, one by the companies jointly, and the two so selected agreed upon a third who, in case of disagreement, was to act as umpire. The arbitrators, after qualification, met on the premises and made the following award:

"We, the undersigned, in accordance with our appointment and the conditions hereinabove set forth, do hereby declare that we have estimated and appraised the sound value of the property herein described and the loss and damage thereto caused by said fire, and our award is as follows:

Total sound value.........................................................$8,726.91
Total loss and damage.......................................... 7,526.91

"Witness our hands and seals at Bowling Green, Ky., this 27th day of April, 1915.

"E. B. BASSETT,<br>E. BROWN,<br>SAM PUSHIN."

Immediately thereafter the insurance companies offered to pay Jones & Company the amount fixed by the board of arbitrators as the sound value of the stock, and take the salvage or remnant of the stock undestroyed as provided in the policies of insurance, but this was refused. Several weeks later the five actions styled above were commenced in the Warren circuit court by Jones & Company to recover on the policies, alleging that the stock was almost wholly destroyed by fire; that the actual cash value of the merchandise at the time of its destruction was $12,234.19, and that the companies had failed to comply with the conditions of the insurance contracts by paying the full face of the policies which amounted to $10,000.00. In the meantime, the salvage or damaged goods saved from the fire and valued by Jones & Co. at $750, and by the board of arbitrators at $1,200, was sold at auction for $1,900, R. E. Jones bidding $1,850 therefor. The nineteen hundred dollars was promptly paid over to Jones & Company.

The answers denied the entire stock was destroyed or was worth $12,234.19, or any sum in excess of $6,500, or that the actual total loss was in excess of $4,000, but admitted that the stock had been damaged by fire on February 7, 1915. By a second paragraph defendants averred that: "'That there was a disagreement between this defendant and plaintiffs as to the amount of the

loss and damage and this defendant in good faith attempted to reach an agreement with plaintiffs as to the amount of the loss and damage sustained to said building. It states that there was a substantial difference between it and plaintiffs as to the amount of the loss, as this defendant was insisting that the loss and damage did not exceed the sum of $4,000, while plaintiffs contended that the amount of loss and damage exceeded $11,000, and defendant furnished to plaintiffs the facts and figures upon which it based its conclusion as to the amount of said loss, but that, notwithstanding these facts, this defendant and plaintiffs could not agree as to the amount to which defendant was indebted to plaintiffs under said policies. It states that thereafter, by reason of such disagreement, it demanded of plaintiffs that they agree to submit to appraisers the amount of loss and damage sustained to said insured property as required by the provisions of the policy above quoted. It states that thereupon the plaintiffs entered into an agreement with this defendant and the other companies which carried policies of fire insurance on this property, to-wit (naming the companies), whereby all the parties concerned agreed to submit to two competent and disinterested appraisers the question of the amount of loss and damage caused by said fire, and also of the question of the actual value of the insured property immediately before the fire, and said agreement provided that one of the appraisers should be selected by the plaintiffs, one by the defendant and other insurance companies mentioned, and that the appraisers so selected should first select a competent and disinterested umpire, to whom the appraisers should submit their differences in case they should fail to agree. . . . It states that pursuant to the terms of the policy and of the said agreement this defendant and the other insurance companies above mentioned, nominated and selected in good faith a competent and disinterested appraiser, one E. B. Bassett, and that thereupon plaintiffs nominated an appraiser of their choice and selection, one E. Brown, and the said appraisers so selected were agreeable to the parties, and the appraisers signed an affidavit as to their competency and qualifications.'' The defendant further pleading relied upon the award of the arbitrators as binding and conclusive upon the plaintiffs, Jones & Company, and as a bar to the prosecution of the five, or any actions.

By replies Jones & Co. denied that the defendant insurance companies, in good faith nominated or selected a competent or disinterested appraiser and charged that Bassett, who was selected by the company as an appraiser, was an interested, incompetent and disqualified person to act in such capacity, and that the companies and their representatives who made the nomination of Bassett did so with the fraudulent intent and purpose to obtain an advantage in the arbitration, and further that Bassett after his nomination and qualification acted in bad faith, and while so acting as an appraiser fraudulently estimated the salvage at too high a price and the sound value of the goods at too low a price and the depreciation of the stock at too great a per cent, and therefore the arbitration and award being obtained by fraud were invalid and without force or effect.

The pleadings being similar and the issues identical the five several actions were consolidated. A motion was then entered by defendants to transfer the consolidated action to the equity side of the docket for preparation. This was objected to by Jones & Company, but while the matter was pending the following agreement with respect to the transfer was made between the parties:

"Pending the decision upon said motion, it was, and is, agreed between plaintiffs and defendants that each and all of the above-styled causes shall be, and the same are hereby, transferred to the equity docket of the Warren circuit court, without either plaintiffs or defendants waiving their right, if any, to thereafter have any issues out of chancery tried by a jury."

The burden being upon Jones & Company they proceeded with the taking of depositions in support of their several contentions and when they were through in chief the companies took sundry depositions, whereupon Jones & Company took several depositions in rebuttal, and the evidence was closed. At this point Jones & Company moved for a transfer of the consolidated action to the common law docket for a trial of certain questions of fact. To this the companies objected, and their objection was sustained, and this is one of the chief grounds of complaint upon this appeal.

The case was then submitted and the chancellor entered a decree sustaining the award of the arbitrators, and as there had been a tender by the companies under section 634 of the Civil Code, adjudged the cost of the

consolidated action against the plaintiffs, Jones & Company, from that date.

The appellants, Jones & Company, insist that the judgment should be reversed: (1) because Bassett, the arbitrator nominated by the companies, was not qualified, disinterested and impartial; (2) extraneous evidence was received by the board of arbitrators in the absence of the parties, without notice to them either of its purpose to hear evidence or of the time or place it was to be received; (3) the court should have submitted to a jury the issue of whether or not Bassett, the arbitrator selected by the insurance companies, was a disinterested and impartial appraiser. We will consider these complaints in the order named:

1. Bassett is a merchant of several years' experience in the city of Hopkinsville. He had acted as arbitrator for an insurance company some years previous to the time in question; he had also acted as an appraiser for insurance companies only a short time before his nomination in this case, and this is the chief ground of objection to Bassett by Jones & Company. Appellants say that the fact that Bassett had acted as arbitrator for insurance companies on other occasions was unknown to them at the time of his appointment and action as arbitrator; that his selection so frequently indicated an alliance with and bias for the companies. The evidence, however, tends to show that Bassett is a man of good business ability and of wide experience in the mercantile business, and while he had acted upon two different occasions, one some fifteen years before, and the other only a few months previous to his appointment in this case, no attempt is made to show that he was not honorable, just and upright, except by inferences such as might be drawn from his frequent selection by insurance companies and his conduct in this case. The arbitrators met upon the premises and concluded the work in one day. Mr. Brown, who was selected by Jones & Company, was a business man of good repute, residing in Bowling Green; so also was the umpire Mr. Sam Pushin. The companies selected Bassett to represent them in the arbitration, and Jones & Company selected Brown to represent them on their side of the controversy, and Bassett and Brown selected Pushin as umpire. Pushin's name was suggested by R. E. Jones of the firm of Jones & Company. It will thus be seen that Jones & Company nominated two of the three arbi-

trators. It was provided in the agreement of arbitration that any two of the three acting might return a binding award. It is insisted, however, that Bassett was a citizen of Hopkinsville and that his home was so far removed from Bowling Green as to disqualify him to act in that locality on account of lack of information with respect to merchandising in the city of Bowling Green. This position, however, is not tenable, because Hopkinsville is no great distance from Bowling Green. In fact the two towns are in many respects much the same and the merchandising carried on in the two is very similar. It must be granted, however, that in the arbitration and while the several questions of difference were being considered, Bassett strongly favored the position of the insurance companies, and while this is true it must not be overlooked that Mr. Brown who represented Jones & Company was equally vigilant for the insured. The umpire, Mr. Pushin, in his testimony makes it quite plain that Bassett insisted upon the rights of the companies while Brown argued the side of Jones & Company, and when the two could not agree the umpire came in and settled the controversy. We are of opinion from the evidence that Mr. Brown, who represented Jones & Company, was as capable and as earnest in behalf of the insured as Bassett was for the insurers. Mr. Brown was a business associate of R. E. Jones. They were partners in real estate business, and Brown frequented the store of Jones & Company. In the arbitration Brown insisted that he knew the nature, character and value of the goods in the Jones & Company store because of his frequent visits there. He also urged that the goods which had been destroyed by fire were worth one hundred cents on the dollar, although the fact is that the whole stock, or a very large part thereof, was second-hand and badly shop worn; that Jones & Company acquired it from other retail merchants who in turn had acquired the same goods from other retail merchants, and that some of the goods had passed through bankruptcy and had been sold and resold. Some of the goods were much out of date. On the other hand Bassett contended that the goods were so old that the insurance companies were entitled to a depreciation of at least fifty per cent. This question was argued pro and con by Bassett and Brown, and when they failed to come to an agreement the umpire Pushin fixed the depreciation at fifteen per cent,

thus allowing Jones & Company eighty-five per cent on the dollar for their stock. While the general rule requires disinterested and impartial arbitrators, it does not go to the extent of invalidating an award where the arbitrators are merely zealous for what they conceive to be the rights of the party who nominated them, and we are of opinion that the facts of this case would not have warranted the chancellor in setting aside the award on the grounds of disqualification of Bassett as an appraiser.

2. As a general rule arbitrators can not, in the absence of the parties or notice to them of the time and place, receive extraneous evidence, which is calculated to have a material bearing upon the award. The fire occurred at night, but the fire department saved a part of the building and stock of goods. The fire started in the rear of the building and burned several holes in the floor; there was a basement underneath. Several racks of clothing were located near the rear of the store, and one of the holes was burned underneath one of the racks of clothing, and one end of this rack fell into a hole in the floor. While the arbitrators were in session the question arose as to the number of suits of clothing which were destroyed. Arbitrator Brown insisted that more than one rack of clothing was destroyed "out of sight;" that some of the racks fell through the holes burned in the floor and were thus totally destroyed; while Bassett insisted that the holes burned in the floor were not large enough to admit of the passage of a rack the size of the ones employed in that store. This was a controverted point. Brown claimed that he had counted the number of racks of clothing in the store, knew their location, the size of the holes in the floor after the fire, and that certain of the racks had fallen into the basement. In other words, Brown testified upon these several points. The other members of the board of arbitration questioned some of his statements and asked that the chief of the fire department of the city of Bowling Green be called in. At the noon adjournment the chief was notified to appear that afternoon and he did come before the board and related the circumstances surrounding the fire, telling the size of the holes in the floor and how he found the clothing. Much of this was disputed by Brown at the time and argument arose between Brown and Moltenberry, the chief of the fire department. In the first

place Jones & Company should not have selected a witness as their arbitrator, and Brown as arbitrator had no right to present extraneous facts or give evidence before the board except such as was obtainable from the premises. Having done so, it does not become Jones & Company to assail the award because Moltenberry, the chief of the fire department, wholly disinterested, was allowed to make statements on the other side. In other words, the insured having introduced evidence on his side of the controversy is in bad grace to object to a single witness on the other side of the controversy. There was one witness on each side. Had Brown refrained from giving evidence the arbitrators would not have found it necessary to have called in a witness on the other side. We are, therefore, of opinion that no prejudicial error was committed by allowing Moltenberry to make statements concerning matters about which Brown had given evidence.

3. Was the award rendered by the board of arbitrators fair and free from fraud? That was the principal issue in the court below. If, as charged in the replies, Bassett acted corruptly and induced the other members of the board of arbitration so to act in arriving at and returning the appraisement and award, then it was the duty of the court to set aside the award. That question, however, was one cognizable in equity. The chancellor had jurisdiction to hear and determine it without the intervention of a jury. The question of whether Bassett was or was not an impartial and disinterested appraiser was a question of fact of which the chancellor had jurisdiction, and if the chancellor had submitted the question of fact to a jury for its determination, the verdict would have been advisory only. The motion to retransfer the consolidated cause to the common law side of the docket for a trial of questions of fact was, therefore, properly overruled.

There is, however, yet another reason why the motion should have been overruled. The actions were brought at law upon the insurance contracts. They were transferred to equity by agreement copied above. The evidence was taken entirely in depositions. Even in a case where either party is entitled to a trial by a jury of an issue out of chancery, the motion therefor must be seasonably made, otherwise it is the duty of the court to deny it. In this case the appellants proceeded

to take proof by depositions both in chief and in rebuttal. The evidence was entirely made up before the motion for the transfer to the common law docket was made. It therefore came too late. As said in the case of Chenault, &c. v. Eastern Kentucky Timber and Lumber Company, 119 Ky. 170, "As shown by the record, the parties had in the meantime, at a considerable expense, substantially prepared the case for trial as an equitable action. Although the defendants were entitled to demand a jury trial, this right, like any other, must be seasonably demanded, and might be waived, not only by express consent to try the case in equity, but by conduct from which such consent might be implied. . . . A party will not be allowed at any stage of the proceeding to sleep upon his rights, and afterwards to withdraw a consent which was necessarily implied from his conduct. In the case at bar both sides went on and took a large mass of testimony, evidently contemplating a trial in equity. If after two years and a half the defendants could be allowed to withdraw the consent which they by necessary implication had given to the trial of the case in equity, then not only would they be allowed in this way to delay the trial, but they would seriously prejudice the plaintiff."

It is insisted, however, that the agreement transferring the case to equity, quoted above, entitled appellants to a retransfer to the common law docket. A careful reading of the agreement brings the inevitable conclusion that it did not enlarge the rights of appellants to have the case returned to the common law docket, but only preserved such rights as appellants then had under the rules of practice. It did not waive any rule of practice but it did indicate that appellants might desire a retransfer of the case at some future time. Considered as a whole, the agreement amounts to this: Appellants reserve the right to have the case returned to the common law docket, if in due time a proper motion be made for that purpose, provided the nature of the issues warrant such action by the court. The agreement could be construed to mean nothing more.

The chancellor considered all the facts of the case and came to the conclusion that the award of the arbitrators was proper and should be sustained, and we are constrained to the belief that the award was fair and just to the appellants, Jones & Company.

There appearing no error to the prejudice of the substantial rights of appellants, the judgment is affirmed.