JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, a nombre de la UNIÓN DE EMPLEADOS DE TRANSPORTE DE CATAÑO, peticionaria, *v.* COMPAÑÍA POPULAR DE TRANSPORTE, INC., demandada.

Núm. 12.—*Sometido:* Enero 10, 1949. *Resuelto:* Marzo 31, 1949.

Hon. *Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en la petición y en el alegato), A. *Torres Braschi, Procurador General Auxiliar* y *Yamil Galib Frangie, Procurador General Auxiliar Especial* y abogado de la Junta de Relaciones del Trabajo, abogados todos de la peticionaria; *Artemio P. Rodríguez,* abogado de la demandada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La demandada, Compañía Popular de Transporte, eliminó el turno de trabajo de limpieza de su estación en San Juan, comprendido entre las horas de cinco de la tarde a nueve de la noche. La Unión de Empleados de Transporte, no conforme con la eliminación del turno, se querelló ante el Comité de Quejas y Agravios de la Unión y de la Compañía Popular de Transporte. Celebrada una vista y no pudiendo llegar a un acuerdo final sobre la solución del caso, tanto la Unión como la Compañía solicitaron la intervención de un árbitro acordando que su decisión sería final y obligatoria. El árbitro emitió un laudo a favor de la Unión y la Compañía se negó a cumplir el mismo.

La peticionaria en este caso, la Junta de Relaciones del Trabajo, asume la representación de la Unión ante nos, fundándose en el inciso 9(2)(c), Ley de Relaciones del Trabajo, Ley núm. 130 del 8 de mayo de 1945 (pág. 407), enmendada por la Ley núm. 6 de 1946 ((1) pág. 19).

La Compañía alega (1) que la petición no aduce hechos suficientes para determinar una causa de acción, (2) que la Junta de Relaciones del Trabajo de Puerto Rico carece de jurisdicción para conocer y actuar en este caso y por consiguiente tampoco la tiene este Tribunal, (3) que el laudo cuyo cumplimiento se solicita es nulo e ineficaz y (4) que la petición fué dirigida al Juez de Turno y no al Tribunal en pleno según exige la sección 9(2)(c) de la Ley de Relaciones del Trabajo.

En cuanto a la primera cuestión, la demandada no ha expuesto fundamento alguno para sostenerlo. La petición a nuestro juicio aduce hechos suficientes. También tenemos jurisdicción en estos casos según hemos resuelto hoy en el de *Junta de Relaciones del Trabajo de Puerto Rico et al. v. New York & Porto Rico Steamship Co.*, pág. 782 de este tomo.

El tercer motivo de impugnación al laudo presenta cuestiones más serias. Sostiene la demandada que el asunto en controversia fué sometido al Sr. Julio Machuca como árbitro y que del laudo aparece: (1) que el árbitro delegó, sin autorización de las partes, en funcionarios del Departamento de Salud para que determinaran si hacía falta o no un empleado de limpieza en la estación de la Compañía durante las horas en que fué suprimido el turno en controversia y (2) que el árbitro, después de celebrada la vista, aceptó como prueba un informe de un inspector del Departamento de Salud, sin que la querellada tuviera oportunidad de repreguntar a dicho inspector ni de presentar prueba en contrario.

En la estipulación para someter el caso a arbitraje, las

partes convinieron que la cuestión a someterse al árbitro Sr. Julio Machuca era la siguiente:

"Alega la Unión que la Compañía ha eliminado un turno en la Estación de San Juan, turno que había sido establecido desde hace mucho tiempo y el cual la Unión considera necesario."

La vista del caso se celebró el 29 de octubre de 1947 con asistencia de las partes.

Del laudo emitido por el Sr. Machuca copiamos aquellas partes que tienen relación con las cuestiones planteadas por la demandada:

"* 　 　 * 　 　 * 　 　 * 　 　 * 　 　 * 　 　 *

"Al Quinto Miembro le llamó poderosamente la atención el alegato que hizo la parte obrera en el sentido de que es de noche cuando más se ensucian todos los inodoros en la estación. Como se trata de una empresa de servicio público, aunque privada, el Quinto Miembro sabe que hay una reglamentación específica promulgada por el Departamento de Salud de Puerto Rico respecto a empresas de esta naturaleza. En consecuencia, *nadie más autorizado que el Departamento de Salud para determinar si ese turno de cinco de la tarde a nueve de la noche era necesario,* ya que, como hemos dicho hace un momento, por tratarse de una compañía de servicio público, como lo es la Compañía Popular de Transporte, ésta viene obligada a llenar requisitos indispensables de higiene y de necesidad pública. En efecto, el martes 4 de noviembre nos trasladamos a la oficina del Subcomisionado de Salud, Dr. José R. Alum, y le solicitamos su cooperación oficial para que un funcionario de ese Departamento realizara en la estación que la Compañía tiene en San Juan una inspección ocular durante varios días y durante las horas cubiertas por el turno que había sido suspendido por la Compañía. El propósito de esa inspección realizada por una persona autorizada por ley para llevarla a cabo, era para determinar *si hacía falta o no hacía falta* un empleado de la limpieza en las horas mencionadas, y en uno u otro caso que se explicaran las razones." (Bastardillas nuestras, excepto las últimas, que son del árbitro.)

Se hace constar entonces las gestiones que hizo el Dr. Alum para nombrar un inspector que realizara la investigación y continúa el laudo diciendo:

"* 　 　 * 　 　 * 　 　 * 　 　 * 　 　 * 　 　 *

"Como la inspección arriba aludida se tomaría su tiempo, el Quinto Miembro les escribió a la Unión y a la Compañía el 18 de noviembre informándoles que la decisión se dilataría un poco porque estábamos en espera de una información que habíamos solicitado a una agencia del Gobierno que se relaciona directamente con el asunto en litigio. Esa información la considerábamos indispensable para rendir el laudo; pero les asegurábamos a las partes que tan pronto como estuviera en nuestro poder la mencionada información, redactaríamos inmediatamente el laudo y les enviaríamos las copias correspondientes a las partes interesadas.

"  *       *       *       *       *       *       *

"Ayer martes 16 de diciembre recibimos el informe oficial del Departamento de Salud. El mismo viene suscrito por el Inspector de Salud, señor José Yejo Rojas, acompañado de una carta del doctor José R. Alum, en su carácter de Subcomisionado de Salud, y otra del señor Roberto López Candal, en su calidad de Oficial de Saneamiento. El informe del señor Yejo Rojas vino acompañado también del Vo. Bo. del Dr. J. Polanco González. Tiene fecha del 8 de diciembre de 1947."

El árbitro hace entonces un extracto del informe del Sr. Yejo Rojas, en el cual se llega a la siguiente conclusión:

"  *       *       *       *       *       *       *

"De acuerdo con lo observado he llegado a la conclusión que existe la necesidad de un empleado que cuide de la limpieza general y del aseo de las instalaciones sanitarias usadas por el público durante las horas indicadas."

Después de discutir otras cuestiones el laudo termina en esta forma:

". . . Como empresa responsable que indiscutiblemente lo es, la Compañía ha hecho y hace todo lo posible por cumplir con los requisitos indispensables de la limpieza. Pero cabe dentro de lo posible admitir también que a pesar de ese celo, algo se le puede escapar, y aunque no de mala fe, coloque a la Compañía al margen de algunos de esos requisitos. *Y es eso lo que se desprende del informe del Oficial de Salud del Departamento de Salud de Puerto Rico. Las recomendaciones de funcionarios de esta naturaleza tienen carácter legal y compulsorio. No se trata, pues, de una mera opinión subjetiva de un Quinto Miembro; se trata de un funcionario experto*

*en la materia,* y autorizado por ley precisamente para llevar a cabo los menesteres que competen a un Oficial de Salud, funcionario que representa el interés público, que en este caso específico está muy por encima de los intereses particulares y privados de la Compañía y de la Unión.

"Por lo tanto, *a la luz de una evidencia tan contundente, decisiva y de carácter oficial, como lo es sin duda el informe rendido por el Inspector de Salud señor José Yejo Rojas, el Quinto Miembro no puede menos que dictar la siguiente*

### Decisión

"La eliminación llevada a cabo por la Compañía Popular de Transporte del turno de la limpieza de la estación de San Juan que abarcaba desde las cinco de la tarde hasta las nueve de la noche, no puede justificarse por la mera invocación de un derecho administrativo, *pues a la luz de un informe de carácter oficial y legal rendido por un funcionario del Departamento de Salud, ha quedado comprobado más allá de toda duda, que ese turno hace falta porque así lo requiere el interés público, ya que como consecuencia de la inspección realizada se comprobó que corre riesgo la salud del público si no se mantiene una vigilancia* sobre las condiciones sanitarias en la estación de la Compañía Popular de Transporte en San Juan, no sólo desde las siete de la mañana hasta las cinco de la tarde, sino incluso hasta por lo menos las nueve de la noche, como se venía haciendo antes." (Bastardillas nuestras.)

Basta una lectura somera del laudo para concluir que el mismo no puede ser sostenido y puesto en vigor.

Si bien el árbitro no hizo una delegación expresa de sus funciones implícitamente sí la hizo al decir en el laudo que ". . . nadie más autorizado que el Departamento de Salud para determinar si ese turno de cinco de la tarde a nueve de la noche era necesario. . ." Y en efecto fué un funcionario de dicho Departamento quien realizó una investigación durante varios días, sin intervención de las partes, y luego rindió un informe al árbitro en el cual, sin que las partes conocieran sus términos, basó exclusivamente su fallo al decir que:

". . . Las recomendaciones de funcionarios de esta naturaleza

tienen carácter legal y compulsorio. No se trata, pues, de una mera opinión subjetiva de un Quinto Miembro. . ."

Y que:

". . . a la luz de una evidencia tan contundente, decisiva y de carácter oficial, como lo es sin duda el informe . . . el Quinto Miembro no puede menos que dictar . . ."

la decisión, en la cual se repite que:

". . . a la luz de un informe . . . ha quedado comprobado más allá de toda duda, que ese turno hace falta. . ."

Aquí hubo delegación implícita de poderes y admisión indebida de pruebas. El hecho de que el árbitro le hubiera escrito una carta a las partes informándoles que estaba en espera de una información que había solicitado de una agencia del Gobierno, la cual consideraba indispensable para rendir el laudo, y que la demandada nada hizo ni objetó, no constituye, como sostiene la peticionaria, una renuncia por parte de la demandada de su derecho a atacar el laudo. En el expediente ante nos no está dicha carta, pero por los términos en que, según el laudo, estaba redactada, la demandada no tenía base alguna para presumir el alcance de la actuación del árbitro ni el uso que iba a darle a la información que había solicitado sin que a la demandada se le concediera una oportunidad de confrontarse con la prueba así obtenida.

Entre las causas para impugnar y anular un laudo de arbitraje está incluída la conducta impropia, no necesariamente fraudulenta, del árbitro, o falta del debido procedimiento de ley. *Ríos* v. *Puerto Rico Cement Corp.*, 66 D.P.R. 470; *Junta de Relaciones del Trabajo* v. *The New York & Porto Rico Steamship Co.*, supra. La regla general es que un árbitro no tiene poder para delegar en otros la determinación de toda o parte de la cuestión que le ha sido sometida. *David Harley Co.* v. *Barnefield*, 47 A. 544. Tampoco puede hacer investigaciones personales sin notificar a las partes y basar su laudo en prueba así obtenida. *Stefano*

*Berrizzi Co.* v. *Krausz,* 146 N.E. 436; 6 Williston *on Contracts,* 5399, nota 2 y casos citados; *R. E. Jones & Co.* v. *Northern Assur. Co.,* 207 S.W. 459; *Giannopulos* v. *Pappas,* 15 P.2d 353; *Jackson* v. *Roane,* 16 S.E. 650. Véanse además, por analogía, *Escudero* v. *Junta Salario Mínimo,* 66 D.P.R. 600; *Casanovas & Cía.* v. *Soltero,* 61 D.P.R. 653; *Luce & Co.* v. *Junta Salario Mínimo,* 62 D.P.R. 452.

El árbitro parece que confundió su misión al creer que por el hecho de existir, según el informe del inspector, un problema sanitario en la estación de la Compañía, él estaba obligado a basar su laudo en dicho informe. El problema sanitario puede ser independiente a la cuestión sometida a arbitraje, o sea la supresión de un turno de limpieza. El Departamento de Salud puede exigirle a la Compañía que cumpla con los reglamentos de sanidad y la Compañía puede que cumpla con ellos sin que exista la necesidad del turno de limpieza que suprimió. Por otra parte, el turno de limpieza suprimido puede que sea necesario restablecerlo independientemente de la situación sanitaria específica encontrada por el inspector o porque ésta forma parte del motivo de su necesidad. Sea ello como fuere, la conclusión a que llegó el árbitro en la forma que se expresa en el laudo no puede sostenerse.

*Debe desestimarse la petición.*

El Juez Asociado Sr. Negrón Fernández no intervino.