JUNTA DE RELACIONES DEL TRABAJO DE P. R., A NOMBRE DE LA UNIÓN NÚM. 1 DE TRABAJADORES DE LA CONSTRUCCIÓN DE P. R., AFILIADA A LA UNIDAD GENERAL DE TRABAJADORES DE PUERTO RICO, peticionaria, *v.* LONG CONSTRUCTION COMPANY, demandada. LA MISMA, peticionaria, *v.* LA MISMA, demandada.

Núms. 29–30.—*Sometidos:* Febrero 1, 1952. *Resueltos:* Marzo 24, 1952.

*Hon. Procurador General Víctor Gutiérrez Franqui, A. Torres Braschi, Procurador General Auxiliar, Hiram R. Cancio, Ramón Acevedo Oliveras* y *Ramón Olivo Nieves,* abogados de la peticionaria; *Francisco Ponsa Feliú* y *Mario Canales Delgado,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En armonía con lo provisto por el artículo 9(2)(*c*) de la Ley núm. 130 de 8 de mayo de 1945 (pág. 407) según fué enmendado por la núm. 6 de 7 de marzo de 1946 (págs. 19, 45)(1) la Junta de Relaciones del Trabajo de P. R., a nombre de la Unión núm. 1 de Trabajadores de la Construcción de P. R., afiliada a la Unidad General de Trabajadores de Puerto Rico, acudió ante este Tribunal en solicitud de que se pongan en vigor los laudos arbitrales dictados en 14 de febrero de 1950 y 5 de julio de 1949 en los recursos del epígrafe, respectivamente. La médula de la petición en el primer caso es que con anterioridad al 30 de mayo de 1949 los albañiles en las obras de la Long Construction Co., la cual de ahora en adelante llamaremos la Compañía, en el proyecto de urbanización de Puerto Nuevo fueron suspen-

(1) El artículo 9(2)(*c*) de la Ley 130, supra, según fué enmendado en 1946 reza así: ". . . Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje." *Cf. Junta Relaciones del Trabajo* v. *Cía. Popular,* 69 D.P.R. 775.

didos debido a falta de cemento; que el indicado día la Compañía informó a la Unión que avisara a los trabajadores que siempre y cuando llegara cemento podían regresar al trabajo el día 31 de mayo a las 7:00 de la mañana; que valiéndose de un anuncio por la radio, la Unión así se lo hizo saber a sus miembros, regresando los obreros a su trabajo en la mañana siguiente, pero por determinadas razones los albañiles que prestaban servicio bajo las órdenes de los capataces que se especifican no trabajaron; y que la Unión, en representación de los albañiles que no trabajaron, solicitó de la Compañía que le pagaran cuatro horas de trabajo de acuerdo con las disposiciones del artículo I, sección (d) del convenio colectivo y del Decreto Mandatorio núm. 11;[2] que en 29 de agosto de 1949 se reunieron representantes de la Unión y del patrono, discutieron la cuestión en el seno del comité de Quejas y Agravios y, no pudiendo ponerse de acuerdo, acordaron designar al Comisionado del Trabajo o a la persona que en su lugar éste nombrara, para que actuara de quinto miembro; y que dictó un laudo el quinto miembro designado declarando con lugar la querella y, no obstante ello, la Compañía se ha negado a dar cumplimiento al mismo. Y en el segundo, que el 13 de octubre de 1948 los albañiles que trabajaban en la división del Sr. Frank Taylor en las obras de la Compañía en el proyecto de Puerto Nuevo fueron suspendidos debido a falta de cemento; que el día 14 de octubre la Compañía informó a los trabajadores que regresaran

[2] En el inciso (d) del artículo I del convenio colectivo suscrito por la Long Construction Company y por la Unión en 10 de diciembre de 1947, se hace constar que las horas de trabajo y las condiciones bajo las cuales los trabajadores o personas serán requeridos para trabajar, serán las prescritas por el gobierno de Puerto Rico por mediación de la Junta de Salario Mínimo según aparecen en el Decreto Mandatorio núm. 11; y por el artículo 5 del referido convenio colectivo se establece un comité de Quejas y Agravios compuesto de cuatro miembros, dos representando al contratista y dos representando a la Unión. Y se dice que cualquier controversia que no sea satisfactoriamente resuelta entre el contratista y la Unión, a través de dicho comité, será referida al Departamento del Trabajo para su decisión, siendo la que se dicte por ese Departamento final y obligatoria para las partes en el convenio.

en la mañana del 15; que los obreros así lo hicieron, pero no trabajaron por no haber llegado cemento; que la Unión, en representación de los albañiles que no trabajaron solicitó de la Compañía el pago de cuatro horas de trabajo de acuerdo con el artículo I, sección (d), del convenio colectivo y del Decreto Mandatorio núm. 11; que la Unión y el patrono se reunieron y discutieron la cuestión, pero no pudiendo ponerse de acuerdo convinieron en designar al Comisionado del Trabajo o a la persona que éste nombrara para que actuara de quinto miembro en el caso; y que el quinto miembro así designado dictó un laudo declarando con lugar la querella, habiéndose negado la Compañía a dar cumplimiento al mismo.

Dictadas por nosotros en 29 de mayo de 1951 sendas resoluciones y notificadas las mismas a la demandada Long Construction Company, ésta compareció en su oportunidad, presentando en cada recurso un escrito intitulado Contestación y Mostración de Causa. En el radicado en el número 29 [3] alega que la única razón por la cual los obreros mencionados por la peticionaria no trabajaron el día en cuestión fué la falta de cemento, la cual no se debió en modo alguno a actos de ella, y lo que a su juicio constituye fuerza mayor a los fines del artículo 5 del Decreto Mandatorio núm. 11; [4] que el acuerdo de sumisión a arbitraje se condicionó expresamente a que el árbitro resolviera de acuerdo con los hechos y el derecho aplicable al caso; que su actitud con relación al laudo emitido no es contraria a la política pública de El Pueblo de Puerto Rico, no teniendo que actuar y dar cumplimiento al laudo emitido por ser éste nulo e ineficaz,

[3] El escrito sobre Contestación y Mostración de Causa presentado en el recurso núm. 30 guarda bastante similitud con el radicado en el núm. 29, por lo que es innecesario reseñarlo.

[4] El artículo 5 del Decreto Mandatorio núm. 11 lee del siguiente modo:

"Salvo en los casos de fuerza mayor, el empleado tendrá derecho a recibir compensación mínima equivalente al importe de cuatro horas de trabajo si, por causa ajena a su voluntad, ocurre cualquiera de las siguientes situaciones: (a) debido a falta de aviso de su patrono a más

por los siguientes motivos: (1) Porque la sumisión fué hecha expresamente sujeta a la condición de que el árbitro resolvería de acuerdo con los hechos y el derecho, alegando ella que el laudo rendido es contrario a éstos; (2) Porque la Junta, la Unión y/o los obreros han incurrido en *laches*, toda vez que a pesar de haberse rendido el laudo en 14 de febrero de 1950 y haber ella manifestado el 7 de marzo siguiente que no daría cumplimiento al mismo la petición no se radicó en este Tribunal hasta el 25 de mayo de 1951, no habiendo habido causa justificada para la demora en el ejercicio de la acción; que la decisión del árbitro es incierta, imprecisa y confusa, al extremo de que no resuelve la cuestión de fuerza mayor ni nada en relación con la reposición de los obreros; y que la petición no aduce hechos suficientes para constituir causa de acción.

■ Hemos leído detenidamente los respectivos laudos arbitrales aquí envueltos y la jurisprudencia aplicable y a nuestro juicio las cuestiones planteadas por la demandada carecen de fundamento. Veamos:

En el laudo rendido en el recurso núm. 29 el quinto miembro hace constar lo siguiente:

"El Quinto Miembro que suscribe entiende, luego de haber meditado ampliamente durante el tiempo que ha estado la presente querella bajo su consideración, que el cemento que había sido despachado por la Ponce Cement Corporation el día 30 de mayo de 1949 y consignado a la Long Construction Company empezó a llegar al atardecer de ese mismo día según fuera sostenido por el señor Eugenio Landráu, testigo de la parte obrera, en el transcurso de su testimonio. También entiende que ese cemento no había sido recibido ni distribuído por los emplea-

tardar a la terminación de su jornada durante el día anterior para que no venga el siguiente, se presenta a la hora de costumbre en el sitio usual de trabajo y no se puede, o no se le permite, reanudar su trabajo; o (*b*) su jornada se suspende antes del transcurso de las primeras cuatro horas.

"En cualquiera de esas dos situaciones el patrono podrá retenerlo durante las expresadas cuatro horas, ya en espera de oportunidad para que reanude la labor, o ya en el desempeño de otra análoga a la que ha venido realizando."

dos de la Compañía a los diferentes Superintendentes de Divisiones hasta el día siguiente. No debe recaer en los obreros la culpa de que no se recibiera o aceptara cemento por parte de los empleados de la Compañía hasta minutos después de las siete de la mañana. Estando los camiones cargados de cemento a la entrada de la Urbanización Caparra Heights, o sea, dentro de las pertenencias de la Long Construction Company, no vemos razón alguna por la cual no se recibiera el cemento y se procediera a repartirlo equitativamente entre todas las divisiones de la Compañía. Si como sostuviera la representación patronal de que el señor Emilio Molina había hecho un recorrido el día anterior por las casas y había logrado recolectar alrededor de cien sacos de cemento, los cuales no eran suficientes para que trabajaran todos los albañiles y sí solamente sesenta de ellos, ¿por qué no se envió un camión de cemento de los que había llegado al sitio donde estaban los albañiles? Por una falta de previsión de la Compañía no podemos penalizar a los obreros aquí reclamantes."

De lo anterior se desprende claramente que a juicio del quinto miembro no sólo no existió fuerza mayor, si que tampoco existieron motivos justificados para que no hubiera cemento disponible en la mañana del día 30 de mayo de 1949.(5)

Aparece además en el laudo emitido en dicho caso una carta fechada el 23 de septiembre de 1949, dirigida al Comisionado del Trabajo por dos miembros de la Unión y por el abogado de la Compañía. Textualmente copiada dice así:(6)

(5) En el laudo emitido en el recurso núm. 30 el quinto miembro se pregunta si existió fuerza mayor que eximiera de responsabilidad a la querellada y contesta específicamente la pregunta en forma negativa.

(6) En el recurso núm. 30 figura en el laudo arbitral una carta de 14 de marzo de 1949, dirigida por dos miembros de la Unión y por Luis Mongil en representación de la demandada, que copiada al pie de la letra reza del siguiente modo:

"14 de marzo de 1949

Hon. Fernando S. Berdecía
Comisionado del Trabajo
San Juan, Puerto Rico
Estimado Señor Berdecía:

Sirva la presente para informarle que el día 10 de marzo de 1949 se reunió el Comité de Quejas y Agravios de la Long Construction para

"23 de septiembre de 1949

Hon. Fernando S. Berdecía
Comisionado del Trabajo
San Juan, Puerto Rico
Señor:

El día 29 de agosto de 1949 se reunió el Comité de Quejas y Agravios del proyecto Long Construction para discutir el caso relacionado con la suspensión de un grupo de albañiles.

No pudiendo ponerse de acuerdo el Comité de Quejas y Agravios, ambas partes de mutuo acuerdo, acordaron designarle a usted, o a la persona que en su lugar designe para que actúe de quinto miembro en este caso, y se sirva resolver el presente caso de acuerdo con los hechos y derechos.

Adjunto le estamos enviando copia del mencionado caso.

Atentamente,

POR LA COMPAÑÍA:
        Mariano Canales

                POR LA UNIÓN:
                        Cruz Román
                        Adolfo Martínez"

Aunque el contexto de la carta de sumisión y arbitraje arriba copiada es ambiguo, del mismo puede inferirse que el propósito de las partes fué que se determinaran no solamente los hechos envueltos sino también que se aplicara la ley a los derechos respectivos de cada una de ellas. En cuanto a ésta, el estudio que de la cuestión hemos hecho no nos convence de que el laudo emitido en el recurso núm. 29 sea contrario a derecho. Véanse *Junta de Relaciones del Trabajo* v. *N. Y. & P. R. S/S· Co.*, 69 D. P. R. 782, 800; *Junta de Relaciones del Trabajo* v. *Cía. Popular*, 69 D. P. R. 775.

---

discutir varios casos relacionados con los trabajadores que se emplean en el proyecto Puerto Nuevo.

No pudiendo llegar a un acuerdo, ambas partes de mutuo acuerdo, acordaron designarle a usted, o a la persona que usted designe para que actúe de quinto miembro en los casos que adjunto a éste le estamos enviando.

Muy atentamente,

POR LA COMPAÑÍA                    POR LA UNIÓN
(fdo.) *Luis Mongil*              (fdo.) *Adolfo Martínez*
                                          (Sec.)
                                  (fdo.) *Juan Sáez Corales*"

■■ La defensa de *laches* tampoco procede porque esa defensa no debe prosperar cuando en derecho se fija un término prescriptivo para ejercitar la acción. *F. Rodríguez Hnos. & Co. v. Aboy*, 66 D. P. R. 525, 540; *Vidal* v. *Monagas*, 66 D. P. R. 622, 641. Rendidos laudos favorables a los obreros, al no darse cumplimiento a los mismos éstos tenían derecho a entablar individual o colectivamente acción en cobro de dinero contra la demandada en reclamación de los jornales que se les adeudaran. El término prescriptivo para esta clase de acciones es el de 15 años. Artículo 1864 del Código Civil, Ed. 1930. A tenor de lo provisto por la Ley núm. 130, supra, al acudir ante este Tribunal en solicitud de que se pongan los laudos en vigor, la Junta no ha hecho otra cosa que comparecer en representación de los obreros y para beneficio de ellos. Si éstos tenían un término de 15 años para entablar su acción personal, dada la forma en que se entabla la acción el término tiene que ser el mismo. Los recursos en ambos casos fueron presentados antes de la expiración del período prescriptivo.(⁷)

■ No consideramos que los laudos sean inciertos, imprecisos ni confusos. Por el contrario, creemos que en ellos se resuelve de manera terminante y específica la única cuestión sometida al quinto miembro, a saber: ¿Tienen o no derecho los obreros envueltos en cada uno de los casos a cobrar por cuatro horas del día 31 de mayo de 1949 (recurso núm. 29) y por cuatro horas del día 15 de octubre de 1948 (recurso núm. 30)? Sobre la reposición de los obreros nada tenía el árbitro que resolver, ya que esa cuestión no era una de su incumbencia; y la de *laches* la resolvió en la forma que ya hemos indicado.

■ En el recurso núm. 30 se alega como fundamento adicional que el laudo rendido es nulo e ineficaz por haber

---

(⁷) En el recurso núm. 29 el laudo se emitió el 14 de febrero de 1950 y la petición de la Junta se radicó ante este Tribunal en mayo 25 de 1951.

En el recurso núm. 30 el laudo se dictó en 5 de julio de 1949 y la petición ante este Tribunal se presentó en mayo 25 de 1951.

delegado el árbitro en todo o en parte sus funciones al resolver la cuestión de derecho sometídale. Desde luego, de existir tal delegación el laudo sería claramente nulo. *Junta Relaciones del Trabajo* v. *Compañía Popular*, 69 D.P.R. 775. Empero, aquí no ha habido tal delegación. Del propio laudo emitido en 5 de julio de 1949 aparece que la parte obrera sometió en evidencia y a la consideración del quinto miembro la carta que en 16 de diciembre de 1948 los representantes de la Unión dirigieron al Lic. Ramón Cancio, Director de la División Legal del Departamento del Trabajo, en la cual, luego de informarle que había un grupo de obreros suspendidos por falta de cemento, a los que la Compañía había informado que regresaran a su trabajo al día siguiente, le preguntan si esos obreros tenían derecho a cobrar las cuatro horas estipuladas en el Decreto núm. 11 o si por el contrario ello constituía fuerza mayor; así como otra carta fechada el 17 de febrero de 1949 dirigida por el Lic. Cancio a los firmantes de la anterior, informándoles que los citados obreros tienen derecho a recibir el importe de las cuatro horas de trabajo dispuestas en el artículo 5 del Decreto Mandatorio núm. 11. En relación con esas cartas y al hacer un análisis de la cuestión, el laudo se expresa así:

"En cuanto a la opinión emitida por el Lic. Ramón Augusto Cancio, Director de la División Legal del Departamento del Trabajo, no vemos razón alguna que induzca al Quinto Miembro a rechazarla, ya que entendemos que la misma abarca los hechos sometidos por la parte obrera, y lo que la Unión pudo haber omitido al someter la consulta no es de tal naturaleza que varíe el resultado de la presente querella."

Sin embargo en su decisión ninguna referencia hace el quinto miembro a la carta del Lic. Cancio y nada hay en el laudo que demuestre que su decisión se basó en la misma o en el criterio en ella expuesto. Por el contrario, el laudo demuestra que el mismo se basó en el criterio personal del quinto miembro.

Finalmente diremos que la lectura que de ellas hemos

hecho nos convence de que las peticiones radicadas aducen hechos determinantes de causa de acción.

*Por las razones expuestas procede declarar con lugar las peticiones radicadas en estos recursos y dictar sentencias en los siguientes términos:*

(1) *En el recurso núm. 29, ordenando a la demandada Long Construction Company que satisfaga a cada uno de los obreros envueltos en el mismo el importe correspondiente a cuatro horas de labor durante el día 31 de mayo de de 1949; y*

(2) *En el recurso núm. 30, ordenando a la demandada Long Construction Company que satisfaga a cada uno de los obreros envueltos en el mismo el importe correspondiente a cuatro horas de labor durante el día 15 de octubre de 1948.*