GUILLERMO ESTEVES, demandante y apelante, *v.* JUNTA DE RETIRO, ETC., demandada y apelada.

Núm. 8271.—*Sometido:* Febrero 10, 1942. *Resuelto:* Marzo 10, 1942.

*Celestino Iriarte, F. Fernández Cuyar,* y *H. González Blanes,* abogados del apelante; *Hon. Procurador General George A. Malcolm* y *G. Benítez Gautier, Subprocurador Auxiliar,* abogados de los apelados.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Guillermo Esteves, después de haber sido empleado por el Gobierno Insular por más de veinte años, solicitó su retiro. Su petición fué concedida para tener efecto en junio 3, 1932, y desde esa fecha hasta julio 15, 1935 recibió su renta vitalicia de $125 mensuales.

En 1935 (Leyes de 1935 (2) pág. 127) la Legislatura aprobó la ley núm. 23. La sección 11 de dicha ley dispone en parte que ''A los pensionados que tengan actualmente 50 años o menos de edad se descontará el 20 por ciento. A los que tengan más de 50 años se les reducirá este descuento a razón de 1 por ciento por cada año de edad que tengan sobre 50, de modo que a los de 70 años de edad este descuento quedará reducido a cero...''. En 1935 Esteves tenía menos de 50 años de edad. En su consecuencia, desde julio 15 a septiembre 12, 1935 recibió su renta vitalicia con una deducción del 20 por ciento. Estas deducciones ascendían a $45.

La sección 19 de la ley núm. 23 dispone en parte que ''Toda persona jubilada cesará en el goce de su retiro mientras ocupe cualquier cargo con sueldo derivado de cualquier fuente de gobierno, fuere ésta federal, insular o municipal...''. Desde septiembre 13, 1935 hasta el presente Esteves ha estado empleado por el Gobierno Federal. Por tanto, desde septiembre 13, 1935 no ha recibido renta vitalicia alguna.

Ésta es una solicitud de *mandamus* para obligar a los apelados a hacer todos los pagos atrasados ascendentes a $4,502.98, y a continuar en el futuro el pago de la renta vitalicia del apelante de $125 mensuales. El caso fué juzgado mediante una estipulación de los hechos. La corte inferior denegó la solicitud, y el caso se encuentra aquí en apelación.

En el caso de *Fernández* v. *MacLeod*, 52 D.P.R. 899, este tribunal resolvió que la sección 11 de la ley núm. 23 era inconstitucional. Decidimos que el reducir bajo sus términos la renta vitalicia de un antiguo empleado insular a quien anteriormente se le había concedido retiro a un tipo fijo de renta vitalicia, lo privaba de un derecho adquirido, en violación de la sección 2 de la Carta Orgánica que dispone que "No se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de la vida, libertad o propiedad sin el debido procedimiento de ley...". La Corte de Circuito de Apelaciones revocó esa sentencia en *MacLeod* v. *Fernández*, 101 F. (2d) 20. Asumimos que la Corte de Circuito de Apelaciones encontró también que la sección 11 no violaba la sección 2 de la Carta Orgánica que dispone que "No se pondrá en vigor ninguna ley que menoscabe el valor de los contratos."

Aún cuando la sección 19 de la ley núm. 23 no estaba envuelta en el caso de *Fernández*, aquí no se establece contención alguna al efecto de que la sección 19 descansa sobre una base diferente a la de la sección 11. Convenimos en que si la Legislatura puede válidamente reducir la renta vitalicia de un antiguo empleado que en la actualidad se encuentra retirado, puede proveer la suspensión de tal renta vitalicia durante el período en que el pensionado esté empleado con el Gobierno Federal. De cualquier manera, como se ha argumentado el caso ante nos, las mismas consideraciones de derechos adquiridos y menoscabo de la obligación de los contratos requiere que las secciones 11 y 19 se sostengan o caigan juntas.

El apelante no distingue el caso de *Fernández*. Su posición es que nosotros resolvimos correctamente el caso de *Fernández* y que la Corte de Circuito de Apelaciones cometió error al revocar nuestra sentencia. Tal argumento debiera ordinariamente dirigirse a la Corte de Circuito de Apelaciones en vez de a nosotros. Sin embargo, el apelante señala el hecho de que en el caso de *Fernández* no se llamó la aten-

ción de la Corte de Circuito de Apelaciones hacia ciertas disposiciones de nuestro estatuto, las cuales, sostiene el apelante, hubieran llevado a la Corte de Circuito de Apelaciones a un resultado diferente de haberlas considerado dicha corte.

En el caso de *Fernández* la Corte de Circuito de Apelaciones decide que si las contribuciones de los empleados del Gobierno a un fondo de retiro son obligatorias, estas contribuciones continúan siendo fondos públicos sobre los cuales los empleados contribuyentes no tienen derechos adquiridos; y como consecuencia, aún cuando un empleado se haya jubilado con una renta vitalicia fija de acuerdo con la ley vigente, su renta vitalicia puede subsiguientemente reducirse o modificarse de otro modo por la Legislatura. Hay un *dictum* al efecto de que "en caso de una contribución voluntaria, la contribución pasa a ser propiedad del empleado o funcionario y a tal extremo, por lo menos, puede obtener un derecho adquirido en el fondo." (101 F. (2d) 20, 25).

El apelante no sostiene que los empleados insulares estén contribuyendo voluntariamente al fondo de retiro. Sin embargo, sostiene que él no obstante tiene un derecho adquirido sobre la renta vitalicia que se le concedió en 1932 por el fundamento de que cuando se retiró él tenía una opción a que se le reembolsaran, con intereses, todos los pagos que él había hecho al fondo de retiro mientras era empleado insular. Arguye que cuando se retiró y eligió recibir una renta vitalicia en vez de reclamar la devolución, con intereses, de todos sus pagos al fondo, su derecho a la renta vitalicia se tornó en derecho adquirido y no estaba sujeto a modificación o rebaja por futuras Legislaturas. Para sostener esta posición se cita el caso de *Retirement Board of Allegheny County* v. *McGovern,* 174 A. 400, (Pa., 1934). No estamos convencidos de que la corte de Pennsylvania basó su decisión exclusivamente en esta disposición del estatuto de Pennsylvania. El caso de *McGovern* parece que se decidió principalmente sobre la base de un derecho adquirido o contrac-

tual sobre su renta vitalicia por un empleado jubilado. Aparentemente la corte usa la disposición sobre reembolso únicamente como uno de los fundamentos de su decisión. Sin embargo, reconocemos que el caso de *McGovern* distingue los casos en los cuales a los empleados jubilados se les negó derechos adquiridos sobre sus pensiones en su declaración a la página 408 al efecto de que "Tales casos, sin embargo, envuelven estatutos que no otorgan un derecho al miembro a retirar las sumas reducidas de sus salarios porque en el fondo no hay parte del dinero del contribuyente, sino únicamente fondos públicos . . .".

Si las disposiciones de nuestro estatuto sobre reembolso, que no fueron consideradas por la Corte de Circuito de Apelaciones en el caso de *Fernández,* llevarían esa corte a un resultado diferente, toca a dicha corte resolver. Nos limitamos a señalar que no podemos estar enteramente de acuerdo con la premisa sobre la cual el apelante basa su argumento.

La ley núm. 104, Leyes de Puerto Rico de 1925 (pág. 949), disponía en su sección 12 que "En caso de que un funcionario o empleado . . . cesare definitivamente en el servicio antes de ser retirado, el importe total de las cuotas deducidas de sus sueldos o compensaciones, con los intereses devengados a razón del 3 por ciento al año . . . se devolverá, al solicitarse, a dicho funcionario o empleado . . . Cuando un funcionario o empleado falleciere estando en servicio activo, el importe total de las cuotas que se le dedujeron, más los intereses . . . se pagará a los herederos legales de dicho funcionario o empleado . . .". A este respecto la sección 12 enmendó las disposiciones de la ley núm. 22, Leyes de Puerto Rico, Sesión Extraordinaria, 1923 (pág. 157), que lee como sigue:

"Sección 12.—En caso de que un empleado o funcionario. . . se separe del servicio antes de adquirir el derecho a retiro, deberá devolvérsele si así lo solicitare el cincuenta (50) por ciento de la suma total de las deducciones de su sueldo. . .

"Sección 13.—En el caso de que un empleado falleciere antes de haber adquirido el derecho a retiro de acuerdo con esta Ley, tendrá derecho a que se le devuelva el setenta y cinco por ciento del total de las deducciones que se le hayan hecho, cuya suma será entregada a sus herederos."

Estas secciones parecería que indican que el derecho a reembolso se limitó a la situación en la cual el privilegio de retiro no existía. Aún cuando es concebible que un empleado pudiera, si así lo elige, solicitar el reembolso de sus pagos al fondo de retiro inmediatamente antes de ser elegible para el retiro, hablando estrictamente, el estatuto no le dió al apelante *al momento de su jubilación* una opción como tal (*a*) para obtener una suma global (*lump sum*) o (*b*) recibir una renta vitalicia. Habiendo adquirido el derecho a la jubilación y solicitado la misma, tenía derecho de acuerdo con la ley según ésta existía entonces solamente a recibir una renta vitalicia basada en contribuciones obligatorias. Aún cuando el resultado práctico puede ser similar, la analogía a la situación del caso de *McGovern* es por tanto incompleta.

▆ También puede alegarse que las secciones 19 y 11 de la ley núm. 23 de 1935 representan un ejercicio razonable del poder del estado para poner el fondo de retiro sobre una sólida base económica (*sound actuarial basis*). Estas secciones no dan fin a la renta vitalicia del apelante. La sección 19 amplía solamente la suspensión existente de la renta vitalicia en el caso de un empleo insular subsiguiente para que incluya un empleo federal similar (véase sección 20, ley núm. 104 de 1925). Y la sección 11 es sustancialmente un requisito de edad, con la rebaja del 20 por ciento siendo restituída gradualmente entre las edades de 50 y 70.

De cualquier modo, en vista del caso de *MacLeod* v. *Fernández*, supra, nos sentimos constreñidos a decidir que las secciones 11 y 19 de la ley núm. 23 de 1935 son válidas en cuanto se aplican al apelante.

*La sentencia de la corte de distrito será confirmada.*