FRANCISCO APONTE MARTÍNEZ y OTROS, demandantes y recurridos, *v.* JORGE L. COLLAZO, CARMEN ANA CULPEPER y el ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrentes; MARCELINO ESQUILÍN ESQUILÍN, demandante y recurrido, *v.* JORGE L. COLLAZO, HON. SECRETARIO DE HACIENDA, y el ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrentes; TOMÁS A. CANCEL SEDA y OTROS, demandantes y recurridos, *v.* ANDRÉS GARCÍA ARACHE y el ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrentes.

*Números:* RE-87-199  *Resueltos:* 8 de marzo de 1990
RE-87-351

612

614

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados de los recurrentes; *William J. Riefkohl,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Procurador General de Puerto Rico recurre ante este Tribunal y nos solicita la revisión de dos (2) sentencias dictadas por la Sala de San Juan del Tribunal Superior que declararon con lugar varias demandas millonarias instadas por miembros de la Policía contra el Estado Libre Asociado en reclamaciones de salarios. Los recursos consolidados(1) versan sobre la interpretación de varias leyes relativas a la retribución de los empleados del Gobierno de Puerto Rico y su aplicación específica al Cuerpo de la Policía. También surge una controversia novel sobre cuál es el término prescriptivo aplicable a las reclamaciones contra el Gobierno por salarios devengados por sus empleados.

---

(1) Los recursos de epígrafe fueron originalmente consolidados en este Foro con *Vega Torres v. Lacot,* RE-87-219, y *Cuevas v. E.L.A.,* RE-87-306. No obstante, los hemos reagrupado para facilitar el análisis y comprensión de las arcanas cuestiones técnicas relativas a la retribución de los empleados públicos.

I

■ A. El recurso *Cancel Seda v. García Arache y E.L.A.*, RE-87-351, se originó como una acción de sentencia declaratoria presentada contra el entonces Superintendente de la Policía Andrés García Arache y el Estado Libre Asociado de Puerto Rico por ciento veintinueve (129) policías. En la demanda alegaron esencialmente que, aunque tienen derecho al pago de unos "pasos" de retribución(2) concedidos por virtud de varias leyes aprobadas entre 1962 y 1967, no recibieron el aumento correspondiente. Solicitaron que se les ordenara a los demandados pagarles las sumas adeudadas.

El Gobierno aceptó los hechos según alegados, pero oportunamente levantó las defensas de prescripción e incuria. Luego de varios incidentes procesales, el foro de instancia dictó sentencia y resolvió que el caso estaba regido por el Art. 1867(3) del Código Civil, 31 L.P.R.A. sec. 5297(3), que dispone que las acciones para exigir el cumplimiento de la obligación de pagar a los menestrales, criados y jornaleros el importe de sus servicios prescribe a los tres (3) años contados desde que dejaron de prestarse los respectivos servicios.

Como consecuencia, el tribunal desestimó la reclamación en cuanto a los demandantes que habían cesado en la Policía en o antes de 22 de noviembre de 1982, justamente tres (3) años antes de la presentación de la demanda. No obstante, declaró con lugar la demanda respecto al resto de los demandantes, cuyo número finalmente ascendió a noventa y tres‐

---

(2) En el argot de los sistemas públicos de personal el término "paso" se refiere a un nivel o tipo de retribución dentro de una misma escala de salarios. Generalmente, las escalas de retribución establecen un sueldo mínimo y uno máximo para las distintas clasificaciones de empleados. Entre el tipo mínimo y el máximo usualmente hay varios niveles de aumentos que se conocen como "pasos".

(93), y ordenó a la Policía que pagara las sumas correspondientes a los aumentos adeudados.

De esta sentencia el Estado recurre invocando la doctrina de incuria y cuestionando que el tribunal a quo erró al determinar que la causa de acción no estaba prescrita en su totalidad a tenor con el Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, o bajo el Art. 1864 del mismo cuerpo, 31 L.P.R.A. sec. 5294.

B. Por otro lado, en *Aponte Martínez v. Collazo* y *Esquilín Esquilín v. Collazo*, RE-87-199, alrededor de novecientos (900) policías solicitaron sentencia declaratoria para que les otorgaran los "pasos" por años de servicio concedidos por la Ley de la Policía de Puerto Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974 (25 L.P.R.A. sec. 1001 *et seq.*), para los años fiscales 1974–1975, 1975–1976 y 1976–1977.[3]

Los demandantes también alegaron que las leyes especiales de 1976 y 1977, que dejaron sin efecto los "pasos" automáticos por años de servicio, son "ilegales" por violar sus derechos "contractuales". Leyes Núm. 1 de 30 de junio de 1975 y Núm. 48 de 19 de mayo de 1976. Oportunamente, el Estado levantó las defensas de prescripción, incuria y jurisdicción primaria de la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.).

Luego de varios incidentes procesales, el tribunal rechazó la defensa de prescripción al amparo del Art. 1867(3) del Código Civil, *supra*. Tampoco acogió la doctrina de jurisdicción primaria por entender que no tenía ante sí una com-

---

[3] Los demandantes alegaron como primera causa de acción que para el año fiscal 1974–1975 no se les pagó el "paso" a que tenían derecho en virtud de la Ley de la Policía de Puerto Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974 (25 L.P.R.A. sec. 1001 *et seq.*). Posteriormente se determinó que el "paso" se había concedido y el tribunal, por estipulación de las partes, dictó sentencia sumaria parcial que desestimó la primera causa de acción para todos aquellos demandantes que habían recibido el pago correspondiente al año fiscal 1974–1975, según los archivos de la Policía.

plicada relación de hechos ni una materia técnica que ameritara la especialización de la agencia administrativa, sino una controversia de derecho que estaba en posición de resolver.

Finalmente, el tribunal concluyó que los "pasos" por años de servicio fueron suspendidos por las leyes especiales de 1975 y 1976, y por la Ley Núm. 3 de 30 de junio de 1977, que concedió un aumento a toda la Policía estatal. Sin embargo, determinó que a partir de 1978 los guardias eran acreedores a dos (2) pasos adicionales por el tiempo servido entre 1975 y 1977.

De dicha sentencia el Estado recurre y afirma que erró el tribunal de instancia al aplicar el término prescriptivo establecido por el Art. 1867 del Código Civil, *supra*, y al no determinar que las reclamaciones de salarios de empleados públicos están regidas por la doctrina de incuria (*laches*). También plantean que el foro de origen se equivocó al interpretar que los estatutos de 1975 y 1976, que dejaron sin efecto los aumentos, no derogaron los pasos automáticos concedidos por la Ley de la Policía de Puerto Rico de 1974.

## II

En estricto orden procesal, en los recursos *Cancel Seda v. García Arache y E.L.A.*, supra, y *Aponte Martínez v. Collazo y Esquilín Esquilín v. Collazo*, supra, debemos determinar si es de aplicación la defensa de incuria o, en la alternativa, si las demandas en dichos recursos están prescritas.(4) De prosperar cualquiera de estas excepciones, sería

---

(4) En *Aponte Martínez v. Collazo y Esquilín Esquilín v. Collazo*, RE-87-199, se levantó en instancia como defensa, mediante moción de desestimación, la jurisdicción primaria de la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) para entender en los casos. El tribunal a quo la rechazó y el Estado, en las correspondientes solicitudes de revisión, no señaló como error dicha actuación del foro de instancia. En su informe, el Procurador General discute como alegado error no sólo la jurisdicción primaria de J.A.S.A.P., sino además, *y por primera vez*, que en virtud de la Sec. 7.5(1) de la Ley de

innecesario considerar los méritos de los planteamientos de interpretación de los estatutos de retribución concernidos. Por otro lado, en *Cancel Seda v. García Arache y E.L.A.*, supra, esta es la única controversia ante nuestra consideración.

■ A. La defensa de incuria (*laches*) está fundamentada en una doctrina de equidad del *common law* angloamericano. Véase *Serrano v. Talavera*, 65 D.P.R. 438, 441 (1945). Se define como dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. *Black's Law Dictionary*, 5ta ed., Minnesota, Ed. West Publishing Co., 1979, pág. 787.

■ En Puerto Rico, no obstante nuestra tradición civilista, hemos aplicado la doctrina de incuria con relación a remedios extraordinarios dispuestos por nuestro ordenamiento que han sido adoptados del Derecho angloamericano,[5] como por ejemplo, el *injunction*,[6] el *mandamus*[7] y el *certiorari*.[8] Ahora bien, tratándose de acciones civiles ordinarias con término prescriptivo señalado en ley, hemos sido consistentes en reiterar que en estas situaciones no procede la defensa de incuria. *J.R.T. v. P.R. Telephone Co., Inc.*,

---

Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1395, la correspondiente acción ante J.A.S.A.P. debió presentarse dentro de los treinta (30) días desde el momento en que no se recibió el pago de los aumentos correspondientes aquí reclamados, por lo que está prescrita. En estas circunstancias y ante la frivolidad del planteamiento, no lo consideramos.

(5) *Serrano v. Talavera*, 65 D.P.R. 438, 442 (1945).

(6) Véanse, *i.e.: Systema de P.R., Inc. v. Interface Int'l*, 123 D.P.R. 379 (1989); *Ferrer v. Varela*, 71 D.P.R. 76, 83 (1950); *Glines et al. v. Matta et al.*, 19 D.P.R. 409, 418 (1913).

(7) *Alonso v. Tribl. Examinador de Médicos*, 74 D.P.R. 158, 165 (1952).

(8) *Pueblo v. Tribl. Superior*, 81 D.P.R. 904 , 912 (1960), y casos allí citados.

107 D.P.R. 76 (1978); *Saavedra v. Central Coloso, Inc.*, 85 D.P.R. 421, 423 (1962); *Junta Rel. del Trabajo v. Long Const. Co.*, 73 D.P.R. 252, 259 (1952), revocado por otros motivos en *J.R.T. v. P.R. Telephone Co., Inc.*, supra; *F. Rodríguez Hnos. & Co. v. Aboy*, 66 D.P.R. 525, 540 (1946).

██ Nuestro Código Civil contiene un detallado sistema de prescripción de las acciones. El Art. 1867 de dicho cuerpo jurídico, *supra*, establece un plazo trienal para el ejercicio de las acciones y el cumplimiento de las obligaciones siguientes:

(1) La de pagar a los jueces, abogados, registradores, notarios, peritos, agentes y curiales, sus honorarios y derechos, y los gastos y desembolsos que hubiesen realizado en el desempeño de sus cargos u oficios en los asuntos a que las obligaciones se refieran.

(2) La de satisfacer a los farmacéuticos las medicinas que suministraron: a los professores y maestros sus honorarios y estipendios por la enseñanza que dieron, o por el ejercicio de su profesión, arte u oficio.

(3) La de pagar a los menestrales, criados y jornaleros el importe de sus servicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos.

(4) La de abonar a los posaderos la comida y habitación, y a los mercaderes el precio de los géneros vendidos a otros que no lo sean, o que siéndolo se dediquen a distinto tráfico. 31 L.P.R.A. sec. 5297.

El citado precepto jurídico es idéntico al Art. 1967 del Código Civil español. Este último, a su vez, tiene su origen en la Ley 10, Título II, Libro 10 de la Novísima Recopilación "dispositiva de que la acción para cobrar lo adeudado a sirvientes y menestrales por concepto de servicios prestados deb[e] establecerse 'dentro de tres años después que fuer[o]n despedidos tales señores' . . .". *Muñoz v. Corte*, 63 D.P.R. 236, 247 (1944), en reconsideración.

██ En sus comentarios sobre dicho artículo, Scaevola señala que el legislador parece "inspirado en una común idea

de retribución de los servicios profesionales y laborales ...".
Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T.
XXXII, Vol. 2, pág. 848. Se refiere esta disposición a la prescripción relativa "a créditos dirigidos a obtener la retribución de servicios prestados". J. Puig Brutau, *Caducidad, Prescripción Extintiva y Usucapión*, Barcelona, Ed. Bosch, 1988, pág. 152. El breve plazo concedido se entiende porque es normal que estos créditos se cobren sin demora, pues son "'deudas de la vida cotidiana, a cuya realización conviene que la ley dé algún impulso'". Puig Brutau, *op. cit.*, citando a L. Díez-Picazo, *infra*. Por esta razón se justifica un acortamiento de los plazos prescriptivos normales.

■ Con relación al inciso tercero del artículo de referencia, se ha dicho que a pesar de sólo incluir literalmente a los menestrales, criados y jornaleros, "la prescripción trienal *afecta todos los créditos, derivados de un contrato de trabajo* o de servicios, como precio o remuneración de los servicios o del trabajo prestado". (Énfasis suplido.) L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 208.[9]

Esta disposición, tanto en Puerto Rico como en España, ha perdido importancia en virtud de leyes especiales. En España lo relativo al contrato de trabajo se halla reglamentado extensamente en el Estatuto de los Trabajadores. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 5ta ed. rev., Madrid, Ed. Tecnos, 1984, Vol. I, pág. 465; V. Prieto Cobos, *Ejercicio de las Acciones Civiles*, 5ta ed., Madrid, Ed. Lex, 1983, T. I, Vol. 11, pág. 1127. Por esta razón, el Art. 1.967 del Código Civil español sólo aplica a aquellos contratos de ser-

---

[9] La jurisprudencia del Tribunal Supremo de España ha señalado, no obstante, que los créditos que son por "servicios de gestión o custodia por parte de mandatarios, comisionistas o depositarios prescriben a los quince años ...". J. Puig Brutau, *Caducidad, Prescripción Extintiva y Usucapión*, Barcelona, Ed. Bosch, 1988, pág. 153.

vicios excluidos del ámbito de aplicación del estatuto laboral especial. Díez-Picazo, *op. cit.*, pág. 209. Sin embargo, dentro de su aplicabilidad, "la prescripción trienal afecta *todos los créditos que el trabajador ostenta para la retribución de su trabajo . . . no sólo respecto del salario en sentido estricto, sino también respecto de todas las demás prestaciones de carácter laboral.* (Énfasis suplido.) Díez-Picazo, *op. cit.*, pág. 209.

■ La Ley de Salario Mínimo de Puerto Rico estableció un término especial de prescripción para regir las acciones de reclamación de salarios. Véanse: Sec. 29 de la Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 246d); *Agostini v. Tribunal Superior*, 82 D.P.R. 219, 230 (1961). No obstante, dicha legislación específicamente excluyó de su aplicación, entre otros, a los empleados gubernamentales. Sec. 30 de la Ley Núm. 96, *supra*, 29 L.P.R.A. sec. 246e(a)(2).

■ El Procurador General argumenta que como el empleo público se rige por leyes especiales y como las relaciones entre el Gobierno y sus empleados no constituyen un contrato, el Código Civil no puede reglamentar el período prescriptivo de la acción de reclamación de salarios gubernamentales. Sostiene que por estos motivos debe aplicar la doctrina de incuria. No tiene razón. Nuestro ordenamiento tiene dispuesto que "[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones [del Código Civil]". Art. 12 de Código Civil de Puerto Rico, 31 L.P.R.A. sec. 12.

■ Considerando que los empleados gubernamentales están excluidos de la Ley de Salario Mínimo de Puerto Rico, y en ausencia de un término prescriptivo estatuido por alguna otra legislación especial, resolvemos que el plazo para ejercitar una acción de reclamación de salarios de un empleado gubernamental se rige por el Art. 1867 del Código

Civil de Puerto Rico, *supra*. La defensa de incuria, ante un término prescriptivo aplicable a la acción, no tiene ninguna relevancia en el caso de autos.

■ B. Aunque a primera vista el plazo para el ejercicio de la acción de reclamación de salarios contenido en el Art. 1867 del Código Civil de Puerto Rico, *supra*, parece ser corto, un análisis más profundo del precepto revela que en algunas circunstancias esto no es necesariamente cierto. El último párrafo del citado artículo dispone que "[e]l tiempo para la prescripción de las acciones a que se refieren los tres párrafos(10) anteriores se contará *desde que dejaron de prestarse los respectivos servicios*". (Énfasis suplido.) Se trata de una excepción a la regla general de que los términos prescriptivos comienzan a computarse desde que se puede ejercitar la acción. *Cf.* Art. 1869 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5299.

■ En *Agostini v. Tribunal Supérior*, supra, pág. 228, tuvimos oportunidad de examinar con detenimiento la forma de computar dicho plazo y, tras analizar extensamente la jurisprudencia previa, concluimos que un

. . . obrero deja de prestar los respectivos servicios (1) cuando cesa de trabajar para su patrono, (2) cuando interrumpe sus servicios por un período de tiempo sin explicación para ello aunque el patrono lo vuelva a emplear, y (3) cuando sin dejar de trabajar para el patrono se opera una novación del contrato por motivos de cambios sustanciales en la natura-

---

(10) Tratándose en este caso de la aplicación del Art. 1867(3) del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5297(3), no tenemos que resolver a qué párrafos se refiere esta oración final. Basta con señalar que la doctrina española está dividida. Por un lado se sostiene que este modo de computar el plazo sólo se refiere a los incisos segundo, tercero y cuarto con apoyo de una muy criticada Sentencia de 16 de febrero de 1899 del Tribunal Supremo de España. Por otra parte, otro sector doctrinal entiende que el precepto sólo aplica a los primeros tres (3) incisos, excluyendo el cuarto. Véase, sobre este particular, L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, págs. 217–223.

leza de los servicios que el obrero venía prestándole. Véase, también, *Srio. del Trabajo v. Joyerías Gordons, Inc.*, 99 D.P.R. 592 (1971).

El Procurador General sostiene que cada vez que se aprueba una ley que afecta sustancialmente las condiciones del empleo público se produce una novación del vínculo obligacional entre el Estado y sus empleados. Argumenta que dicha novación se produce por virtud de la aprobación de cualquier estatuto posterior que reglamente la retribución de los empleados públicos. Aunque su argumento tiene méritos, no tiene razón en su aplicación al caso de autos.

En este caso los demandados ni siquiera han intentado demostrar en primera instancia una novación por cambio *sustancial* en la naturaleza de los servicios prestados por los demandantes. *Cf. Vicenty v. Corona Brewing Corporation*, 73 D.P.R. 135, 144 (1952). Se limitan a implicar, por primera vez en revisión, que cualquier cambio en la remuneración opera como una novación.

Por otra parte, los recurridos señalan en su alegato que "ellos continuaron prestando los mismos servicios, trabajando las mismas horas, haciendo las mismas tareas, desempeñando las mismas funciones . . . [y que u]n aumento módico en los sueldos de los demandantes no constituye 'cambio sustancial en la naturaleza de los servicios prestados', ni un nuevo contrato con 'cambios sustanciales en las condiciones del trabajo' que puedan implicar la novación . . .". Alegato de los demandantes, págs. 7–8.

Les asiste la razón a los recurridos. Realmente si acogemos el planteamiento del Procurador General tendríamos que aceptar que cualquier cambio en la relación obrero-patronal constituye una novación. Nuestra jurisprudencia exige un "cambio sustancial" el cual aquí no se ha demostrado.

Concluimos que no erró el tribunal a quo al estimar que estaban prescritas únicamente aquellas reclamaciones de

personas que habían cesado en el empleo con anterioridad al plazo trienal anterior a la presentación de la demanda. Por estos motivos procede la confirmación de la sentencia en el recurso de *Cancel Seda v. García Arache y E.L.A.*, supra.

## III

En *Aponte Martínez v. Collazo* y *Esquilín Esquilín v. Collazo*, supra, el Procurador General cuestiona la conclusión del Tribunal Superior de que las leyes especiales de 1975 y 1976 no anularon los pasos por años de servicio concedidos por la Ley de la Policía de Puerto Rico de 1974. El Estado sostiene que la Ley Núm. 58 de 19 de junio de 1978 derogó las disposiciones de la Ley de la Policía de Puerto Rico de 1974 que otorgaba esos aumentos.

Con el fin de evaluar los méritos del recurso debemos examinar no sólo la cronología de las leyes de retribución concernidas, sino también otras leyes análogas aprobadas para los policías. Las leyes referentes al mismo asunto deben ser interpretadas refiriendo las unas a las otras, ya que lo que es claro en un precepto puede explicar lo dudoso en otro. Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18. El historial legislativo y social de la ley así como los estatutos posteriores *in pari materia* pueden ayudar a interpretar la verdadera intención legislativa. *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989), citando con aprobación a *Figueroa v. Díaz*, 75 D.P.R. 163, 185 (1953), opinión concurrente del Juez Asociado Señor Ortiz.

El 22 de agosto de 1974 se aprobó un nuevo estatuto rector para dicho cuerpo policíaco, la Ley Núm. 26, *supra*. En su Art. 11 (25 L.P.R.A. sec. 1011) dicha ley fijó las escalas de retribución a los miembros de la Uniformada y reglamentó la forma en que las escalas se aplicarían. El Art. 11(b)(2) dispuso:

Todos los miembros de la Policía percibirán un aumento equivalente a un paso en la escala correspondiente al completar cada año de servicio, contando a partir de la fecha de su nombramiento original o de la fecha de reingreso, si ese fuere el caso. Se aumentará al tipo inmediato superior el sueldo de todo miembro de la Fuerza que no coincida con uno de los tipos específicos comprendidos en la escala, una vez concedido el aumento. 25 L.P.R.A. sec. 1011(b)(2).

■ Debido a la precaria situación económica del país, precipitada por el aumento en los precios del petróleo, las finanzas del Gobierno sufrieron una grave crisis durante 1975 y 1976.([11]) En dicho momento histórico se aprueba la Ley Núm. 1 de 30 de junio de 1975, que en su Art. 1 dispuso:

Por la presente se dejan sin efecto durante el año fiscal 1975–76 los aumentos de sueldo dispuestos para los empleados públicos por las siguientes leyes según en cada caso se indica:

. . . . . . . .

(c) El aumento por años de servicio que le corresponda a los miembros de la Policía durante el año fiscal 1975–76 en armonía con la Ley [N]úm. 26 aprobada en 22 de agosto de 1974. 1975 Leyes de Puerto Rico 641.

De modo similar y en palabras casi idénticas, el Art. 1(c) de la Ley Núm. 48, *supra*, dejó "sin efecto durante el año fiscal 1976–77" el mismo aumento. 1976 Leyes de Puerto Rico 138. El historial legislativo de estas medidas claramente indica que el Gobierno, aunque estaba en la mejor disposición de conceder los aumentos en dichos años, no podía hacerlo "por las limitaciones fiscales [de] la [entonces] presente situación económica . . .". Informe de las Comisiones de Hacienda y Gobierno del Senado sobre el P. del S. 1362 de 20 de junio de 1975, pág. 1; Informe de las Comisiones de

---

([11]) De este hecho podemos tomar conocimiento judicial. Regla 11(A)(2) de Evidencia, 32 L.P.R.A. Ap. IV.

Hacienda y Gobierno de la Cámara de Representantes sobre el P. de la C. 1834 de 5 de febrero de 1976, pág. 1.

Pasada la crisis, el 30 de junio de 1977 se aprobó la Ley Núm. 3 (1977 Leyes de Puerto Rico 567) que dispuso aumentos de sueldo efectivos el 1ro de julio de 1977 para maestros, policías y empleados cubiertos por la Ley de Retribución Uniforme. Este estatuto concedió de uno (1) a tres (3) pasos en las escalas de retribución vigente a todos aquellos empleados públicos que estuvieran en servicio o vinculados a éste al 30 de junio de 1977.[12] No obstante, con el aparente propósito de evitar una duplicidad de aumentos, la ley también dejó sin efecto durante el año fiscal 1977–1978 aquellos aumentos concedidos a cada uno de los grupos de empleados públicos por las leyes especiales de retribución.

◼ Al considerar el momento de la aprobación de la Ley Núm. 3, *supra*, y los sustanciales aumentos que este estatuto concedió,[13] la Asamblea Legislativa tuvo la intención

---

[12] Para los policías, disponía la siguiente tabla de pasos a concederse:

| | |
|---|---|
| Guardia Cadete | tres |
| Guardia II | tres |
| Guardia I | tres |
| Cabo | tres |
| Sargento | tres |
| Teniente II | dos |
| Teniente I | dos |
| Capitán | dos |
| Comandante | uno |
| Teniente Coronel | uno |
| Coronel | uno |
| Agente Investigador I | dos |
| Agente Investigador II | dos |
| Agente Investigador III | dos |
| Agente Investigador IV | uno |
| Agente Investigador V | uno |
| Agente Investigador Auxiliar | dos |

[13] Cuando una ley admite más de un significado para determinar el más correcto, "se puede acudir a las circunstancias existentes en el momento de la aprobación de la ley, la ocasión en que fue aprobada y el mal que trata [de] evitar,

de compensar a los emlpleados públicos que no recibieron los aumentos por años de servicio en los años fiscales 1975–1976 y 1976–1977. Con la aprobación de la Ley Núm. 3, *supra*, a los policías se les concedió unos pasos que si bien en algunos casos no los equiparaban en sueldo al monto que hubiesen · recibido de haberse materializado en los años precendentes el aumento por años de servicio de la Ley de la Policía de Puerto Rico de 1974, en otras instancias lo mejoraban.[14] Para evitar duplicar los aumentos, la Ley Núm. 3, *supra*, dejó sin efecto durante el año fiscal 1977–1978 los aumentos dispuestos por otras leyes que hubiesen correspondido a los empleados por ésta beneficiados.

Finalmente, en lo aquí pertinente, la Ley Núm. 58 de 19 de junio de 1978 enmendó la Ley de la Policía de Puerto Rico de 1974, *supra*, y entre otras modificaciones le introdujo al Art. 11 nuevas escalas de retribución para los años fiscales 1978–1979, 1979–1980 y 1980–1981. El inciso (b)(2) de dicho artículo fue sustituido y en su lugar se dispuso lo siguiente:

> *Comenzando el 1ro. de julio de 1981* todos los miembros de la Policía percibirán un aumento equivalente a un paso en la escala correspondiente al completar cada año de servicio, *contados a partir del año económico 1980–81 ó de la fecha de su reingreso, lo que ocurra más tarde*, si ese fuere el caso. Se aumentará al tipo inmediato superior el sueldo de todo miembro de la fuerza que no coincida con uno de los tipos especí-

---

el remedio que se intenta aplicar, la legislación anterior y las consecuencias de la interpretación propuesta [citas omitidas]". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 279.

[14] En el mejor de los casos los policías recibieron tres (3) pasos efectivos el 1ro de julio de 1977. Para un policía con rango de sargento o inferior que entró a la Fuerza —por ejemplo— en septiembre de 1974, al primero de julio de 1977 había perdido dos (2) aumentos de sueldo de un "paso", cada uno debido a la aplicación de las Leyes Núm. 1 de 30 de junio de 1975 y Núm. 48 de 19 de mayo de 1976. Por virtud de la Ley Núm. 3 de 30 de junio de 1977, Leyes de Puerto Rico, pág. 567, este policía hipotético recibió inmediatamente en dicha fecha tres (3) pasos. Refiérase a la tabla de pasos concedidos en el esc. 12.

ficos comprendidos en la escala, una vez concedido el aumento. (Énfasis suplido.) 25 L.P.R.A. sec. 1011(b)(2).

La Asamblea Legislativa justificó la posposición de la fecha de efectividad de los aumentos anuales automáticos concedidos a base de años de servicio porque la implantación de las nuevas escalas representaba aumentos significativos. No es hasta que ha transcurrido un (1) año de estar en vigor la tercera escala establecida que se reincorpora el sistema de pasos automáticos anuales. Véanse: Informe de la Comisión de Hacienda del Senado sobre el P. de la C. 513 de 14 de abril de 1978, pág. 2; Informe de la Comisión de Hacienda de la Cámara de Representantes sobre el P. de la C. 513 de 3 de abril de 1978, pág. 9.

En el caso de los policías, el tribunal de instancia ordenó el pago del aumento por años de servicio para 1978 fundamentándose en una disposición de la Ley de la Policía de Puerto Rico de 1974 que había sido modificada sustancialmente por la Ley Núm. 58, *supra.* Esta ley enmendó el artículo que concedía los aumentos automáticos a través de "pasos" por años de servicio para que fueran *efectivos el primero de julio de 1981. El cómputo de los años de servicio comenzaría a partir del año fiscal 1980–1981*, fecha en que entró en vigor la última escala implantada por la Ley Núm. 58, *supra.* Para julio de 1978 no existía precepto de ley alguno que autorizara los aumentos por años de servicio que ordenó el tribunal a quo.

## IV

Por otro lado, las leyes que dejaron sin efecto los aumentos por tres (3) años consecutivos no derogaron la disposición de la Ley de la Policía de Puerto Rico de 1974 que autorizaba el aumento automático por años de servicio. Las disposiciones de todos estos estatutos son armonizables y, además, las derogaciones tácitas no son favorecidas. Véanse:

Arts. 5 y 6 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5 y 6; *Campis v. Pueblo*, 67 D.P.R. 393, 396 (1947). En ausencia de legislación posterior que deje sin efecto los aumentos nuevamente o los derogue específica y definitivamente, *el derecho a éstos readquiere vigencia, transcurrido el período de suspensión.*

▪ Ahora bien, una vez vuelve a ser efectivo el aumento automático, ¿debe computarse el tiempo servido en el empleo público durante el período de suspensión para propósitos de la concesión de los pasos correspondientes por años de servicio? Entendemos que no. Al llegar a esta interpretación consideramos determinante la aprobación de la Ley Núm. 3, *supra.* La Asamblea Legislativa, al concederle a los policías un sustancial aumento en 1977, *necesariamente tuvo que tener presente el hecho de que estos empleados públicos no habían recibido aumento en los dos (2) años previos.* La intención de la Legislatura al aprobar dicha Ley Núm. 3, *supra,* fue precisamente compensar a estos empleados por los aumentos dejados de percibir cuando se dejó sin efecto los pasos concedidos por la legislación anterior.

▪ De haber sido esa la intención legislativa, el presupuesto aprobado para esos años hubiese asignado los recursos para estos aumentos sustanciales. En vista de que de los autos no se desprende que se hicieron las asignaciones presupuestarias pertinentes, la interpretación lógica y racional de estos estatutos es que las leyes especiales de 1975 y 1976 derogaron para esos años específicos los pasos automáticos concedidos por la Ley de la Policía de Puerto Rico de 1974. Una vez el país empezó su recuperación económica en 1976 y esto se refleja en los ingresos al fisco en 1977, el Estado asignó los recursos necesarios para mejorar los salarios de todos los empleados públicos, incluso la Policía. Cualquier otra interpretación sería contraria a un sistema presupuestario ordenado y racional que requiere el Estado moderno.

Por estas razones, *procede la revocación de la sentencia en el recurso Aponte Martínez v. Collazo y Esquilín Esquilín v. Collazo, supra, y la confirmación del dictamen emitido en Cancel Seda v. García Arache y E.L.A., supra.*

El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Rebollo López al disentir expresa que entiende que "la decisión mayoritaria emitida por el Tribunal en los casos de epígrafe constituye una de las injusticias más grandes que jamás se haya cometido contra empleados públicos tan sacrificados y mal remunerados como lo son los miembros del magisterio puertorriqueño y de la Policía de Puerto Rico".

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

Suscribimos los pronunciamientos de la opinión relativos a la aplicación del plazo trienal del Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, para el ejercicio por un empleado gubernamental de una acción en reclamación del pago de salarios y aquellos otros créditos derivados de su trabajo. Según los mismos, el cómputo de su término prescriptivo se inició desde que dejaron de prestarse los servicios. De igual manera, estamos contestes con la técnica adjudicativa que invoca varias reglas de hermenéutica atinentes para descifrar la complicada madeja de leyes que gobiernan el asunto, así como con el resultado jurídico. Sin embargo, notamos que la decisión de hoy no resuelve el planteamiento constitucional central que frontalmente esgrimen los recurridos. *Aponte Martínez v. Collazo* y *Esquilín Esquilín v. Collazo,* RE-87-199. Debimos hacerlo. Nos explicamos.

## I

En buena metodología decisoria, reiteradamente hemos resuelto que este Tribunal no abordará cuestiones constitucionales cuando un caso pueda resolverse *en armonía con los criterios del recurrente* y en consonancia con los mayores fines de la justicia. *Molina v. C.R.U.V.*, 114 D.P.R. 295, 297 (1983); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 513 (1972); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971). Esa norma prudencial de autorrestricción es inaplicable al caso de autos. Adviértase que el tribunal de instancia dilucidó los planteamientos constitucionales de los demandantes recurridos *Aponte Martínez v. Collazo* y *Esquilín Esquilín v. Collazo*, supra, pues acogió favorablemente sus reclamos por *otros* fundamentos. En este sentido fue perfectamente comprensible y fue correcto su proceder. Sin embargo, ante nos la situación se presenta de distinto modo. En vista de que nuestro dictamen les es desfavorable, no podemos seguir ese mismo curso decisorio de abstención. Ineludible es, pues, afrontar el planteamiento constitucional. Veamos.

## II

La tarea se reduce a analizar si en las circunstancias de estos casos consolidados existe algún fundamento constitucional válido que impida a la Asamblea Legislativa derogar las Leyes Núm. 1 de 30 de junio de 1975, Núm. 48 de 19 de mayo de 1976 y Núm. 3 de 30 de junio de 1977, que dejaron sin efecto los aumentos salariales concedidos a policías y maestros por previa legislación. Estos aducen que esos estatutos son de naturaleza confiscatoria porque menoscabaron derechos contractuales y les privó de su propiedad sin el debido proceso de ley y debida compensación. Enarbolan la tesis como una violación a las Secs. 7 y 9 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1.

A modo de paréntesis, de entrada, observamos que en su sustrato el argumento parte de la premisa de que la relación entre los empleados públicos y el Estado es de naturaleza contractual, protegida por los llamados *derechos contractuales* del Art. VI, Sec. 10 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, y del Art. 1, Sec. 10 de la Constitución federal, L.P.R.A., Tomo 1.

Por su parte, el Estado niega esa naturaleza y sostiene que tales relaciones sólo se rigen por legislación. Según esta hipótesis, arguye que le es permitido cambiar las relaciones con sus empleados en aspectos tales como salarios, condición de empleo, etc., sin ningún otro impedimento que el que emana de la propia ley. Aclaremos el debate.

## III

Definitivamente, la vieja doctrina que negaba naturaleza contractual a la relación *estado-empleado gubernamental* fue claramente superada. La propia Ley de Permanencia, 18 L.P.R.A. sec. 214 *et seq.*, así la ha concebido con referencia a los maestros del Departamento de Instrucción Pública.[1]

---

[1] *"Maestros permanentes—Requisitos*

"Todo maestro en servicio activo en las escuelas públicas, mediante nombramiento hecho de conformidad con la Ley Escolar, los reglamentos del Departamento de Instrucción Pública y los reglamentos de la Junta Estatal de Instrucción Vocacional, Técnica y de Altas Destrezas, y que haya ejercido como tal en cualquier categoría de escuela durante el período probatorio que se especifica más adelante, tendrá derecho a ser *contratado con carácter permanente* en la categoría correspondiente en que esté ejerciendo al expirar dicho período probatorio, sin otras pruebas de calificación o capacidad profesional que la posesión de una licencia regular de la misma categoría del puesto que ocupa el maestro y haber realizado, a juicio del Departamento de Instrucción Pública, labor satisfactoria. Para los efectos de las secs. 214 y 218 de este título, no se tomará en consideración el tiempo que los maestros ejerzan en calidad de provisionales. Tales maestros tendrán derecho *a ser contratados con carácter permanente* en el municipio en que están ejerciendo al expirar el período probatorio. El tiempo trabajado por los maestros con certificado regular en calidad de sustituto y que hayan realizado labor satisfactoria en puestos de la misma categoría se convalidará como período probatorio. La equivalencia de los dos (2) años de período probato-

Véanse: *Lupiáñez v. Srio. de Instrucción*, 105 D.P.R. 696 (1977); *González v. Gallardo, Comisionado*, 62 D.P.R. 275, 278 (1943).

Ausente constitucionalmente la negociación colectiva como esquema a regir las relaciones clásicas entre el Estado y sus empleados, es obvio que las modificaciones relativas a salarios y otros beneficios económicos se rigen estrictamente por la legislación aplicable. En este ámbito, la fuente originaria de cualquier obligación es la *ley*. Sin embargo, esta conclusión no desnaturaliza la esencia de esa relación ni el carácter de obligación contractual que emerge con referencia a los salarios de los empleados gubernamentales. Una vez en vigor la legislación que los autoriza —por su naturaleza de derechos adquiridos— se incorporan al contrato de servicios *estado-empleado gubernamental*.

Ese marco doctrinario nos obliga a enfrentar la verdadera disyuntiva: ¿puede el Estado constitucionalmente revocar aumentos de salarios concedidos por ley que no han entrado en vigor? La contestación exige unas breves aclaraciones. Es axioma elemental que las leyes pueden ser derogadas, entera o parcialmente, por otras leyes pertinentes. En esta amplia potestad derogativa, el acto legislativo sólo está limitado por algunas disposiciones constitucionales expresas[2] que le impiden menoscabar las obligaciones con-

---

rio comprenderá el trabajo realizado con contrato sustituto o probatorio durante dos (2) años consecutivos. Tales maestros tendrán derecho *a ser contratados con carácter probatorio o permanente* en el municipio donde estén trabajando cuando les corresponda una plaza en propiedad." (Énfasis suplido.) 18 L.P.R.A. sec. 214.

[2] Las únicas disposiciones constitucionales que expresamente limitan el poder del Estado para reducir sueldos están contenidas en el Art. VI de nuestra Constitución, L.P.R.A., Tomo 1. La Sec. 10 prohíbe la disminución del sueldo de los funcionarios públicos después de su elección o nombramiento. Esta disposición no aplica a los empleados públicos, porque éstos no están investidos de los poderes del soberano. *De la Vega v. Sancho Bonet, Tes.*, 56 D.P.R. 753 (1940). Véanse, además: *Candelario Muñiz v. Tribunal Superior*, 101 D.P.R. 25, 29 (1973); Op. Sec. Just. Núm. 1973-3.

tractuales a algún interés propietario o derecho adquirido protegido por el debido proceso de ley sustantivo.

En el pasado situaciones similares a las que hoy confrontamos se dilucidaron bajo el prisma de si en la fecha en que se aprobó o comenzó a regir la ley derogatoria los reclamantes tenían un derecho adquirido (*vested right*). Véanse: *Esteves v. Junta de Retiro*, 60 D.P.R. 98 (1942); *Torres v. Winship*, 56 D.P.R. 693 (1940). Hoy día, sin embargo, se reconoce que "[l]a doctrina de derechos adquiridos [utilizada en las primeras décadas del presente siglo] eventualmente se fundió con el debido proceso de ley sustantivo. Como norma separada hoy se utiliza muy raramente". R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, págs. 923–924.

Bien le reconozcamos a los empleados reclamantes derechos adquiridos o propietarios, o lo cualifiquemos como una mera expectativa de un derecho —como alega el Procurador General— llegaríamos al mismo resultado: la actuación de la Asamblea Legislativa es permisible porque configura un ejercicio válido propio de su facultad para impedir o posponer los efectos de leyes en determinadas circunstancias.

Así, en *Bayrón Toro v. Serra*, 119 D.P.R. 605, 620–621 (1987), al precisar los criterios a considerarse al evaluar una modificación de este género, señalamos, como pasos a seguir, "determinar en primer lugar si estamos ante una obligación contractual protegida por la Constitución. En segundo lugar, es preciso que la modificación en la obligación en efecto constituya un menoscabo de una obligación contractual. Una vez determinado que existe un menoscabo, entonces debemos precisar si el mismo viola la garantía constitucional. *United States Trust Co. v. New Jersey*, supra. *Si éste surge como*

---

Por otro lado, la Sec. 11 del Art. VI de nuestra Constitución, L.P.R.A., Tomo 1, sólo aplica a los sueldos de los legisladores. Cualquier reducción sólo será efectiva durante el término de la Asamblea Legislativa que la apruebe.

*consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público, sostendremos su validez. Warner Lambert Co. v. Tribunal Superior, supra; United States Trust Co. v. New Jersey, supra".* (Énfasis suplido.)

En el caso ante nos, la razonabilidad de las medidas es manifiesta. La inestabilidad económica de mediados de la década del setenta, desatada por la crisis energética mundial, hizo imperativo la adopción de medidas legislativas como las que hoy se impugnan. No se nos ha demostrado —ni podemos así afirmarlo— que la suspensión o posposición de los aumentos salariales fuera producto del capricho, desdén o ineficiencia de la administración pública.

La estabilidad en las relaciones entre el Estado y sus empleados, igual que las relaciones contractuales privadas, ameritan la protección de nuestro ordenamiento jurídico. Ello no obsta para que la Asamblea Legislativa utilice sus amplios poderes para aprobar medidas que promuevan al bien común. Incluso se ha permitido la aplicación retroactiva de estatutos en *situaciones de comprobada emergencia* como las provocadas por conflictos bélicos, desastres de la naturaleza o desajustes económicos (inflaciones o recesiones económicas). *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 396 (1973).

## IV

En resumen, en la instancia ante nos es improcedente el reclamo de infracción constitucional. Debidamente justificada la razonabilidad del menoscabo de las relaciones contractuales por la legislación, creemos pertinente, a modo de epílogo, reproducir las expresiones vertidas por el Juez Asociado Señor Alonso Alonso en su voto particular en *Bayrón Toro v. Serra,* supra, pág. 624, a los efectos de que la *doctrina* que hoy rubricamos no debe concebirse como "cheque en blanco para que el Estado modifique los derechos". Según

esta óptica, no debe extenderse a situaciones de desajustes económicos, atribuibles sólo o mayormente a ineficiencias administrativas, que quieran subsanarse a costa de los sectores más débiles y peor remunerados de la economía como son los empleados públicos quienes, "honrando una vocación de servicio, que en muchas ocasiones conlleva sacrificio y renuncia de bienes materiales, dedica[n] los años fructíferos de su vida al bien común". *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807, 811 (1973).