Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARIO ENRIQUE ALVERIO DOMÍNGUEZ<br><br>**Apelado**<br><br>YVETTE VALLE AVILÉS<br><br>EX PARTE<br><br><br>**KARLA ALVERIO VALLE**<br><br>**Apelante** | KLCE202400746 | *Certiorari acogido como **Apelación*** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E DI2012-0459<br><br>Sobre:<br>Divorcio<br>(Alimento entre Parientes) |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 22 de agosto de 2024.

El 8 de julio de 2024, compareció ante este Tribunal de Apelaciones, la joven Karla Alverio Valle (en adelante, joven Alverio Valle o parte apelante), mediante recurso de *Certiorari*[1]. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 27 de noviembre de 2023, reducida a escrito el 30 de noviembre de 2023, y notificada el 4 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En virtud del aludido dictamen, el foro *a quo* desestimó una solicitud de alimentos presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, se confirma el dictamen apelado.

---

[1] Se acoge el recurso de *Certiorari* como una **Apelación** por ser lo procedente en Derecho, sin embargo, mantenemos inalterada su identificación alfanumérica por motivos de economía procesal.

Número Identificador

RES2024 _____

# I

De acuerdo al expediente, en el 2017 la joven Alverio Valle presentó una solicitud de alimentos entre parientes[2], en contra de su padre, el señor Mario E. Alverio Domínguez (en adelante, señor Alverio Domínguez o parte apelada). Luego de varios trámites procesales, innecesarios pormenorizar, el 28 de enero de 2020, el Tribunal de Primera Instancia emitió una orden, donde le requirió a las partes que se reunieran, no obstante, estas incumplieron con lo ordenado[3].

Según surge de la *Resolución* apelada, la parte apelante no realizó ninguna solicitud o trámite en su caso hasta el 4 de enero de 2023, fecha en que presentó una moción[4].  En la *Orden* emitida el 18 de enero de 2023[5], el Tribunal de Primera Instancia le concedió a las partes un término de veinte (20) días para cumplir con la *Orden* del 18 de enero de 2020, es decir, para reunirse.  Les apercibió que, expirado el término podría imponer sanciones económicas.  Además, le requirió a la joven Alverio Valle en un término de diez (10) días presentar su Planilla de Información Personal y Económica (PIPE); copia de su matrícula de los pasados tres (3) años junto a las calificaciones obtenidas; becas federales y estatales que hubiera recibido; estipendios económicos; préstamos estudiantiles; ingreso por concepto de empleo y beneficios del PAN u otro programa de Gobierno. Asimismo, le concedió a la parte apelada un término de diez (10) días para presentar su PIPE.

El 2 de febrero de 2023, la parte apelada presentó la *Urgente Moci[ó]n en Solicitud de Orden*.  Por medio de esta arguyó que, la moción presentada por la parte apelante no le había sido notificada

---

[2] La referida solicitud no fue anejada como parte del expediente.
[3] Cabe destacar que dicha orden no fue anejada al expediente, tal información surge de la *Resolución* apelada.
[4] La referida moción no fue anejada como parte del expediente.
[5] Debemos señalar que la parte apelante no acompañó dicha orden al apéndice de su recurso, advinimos en conocimiento de esta debido a que la parte apelada la anejó al apéndice de su oposición.

y solicitó que los términos concedidos en la *Orden* comenzaran a decursar una vez le fuese notificada.

El 8 de febrero de 2023, y el foro de primera instancia emitió una *Orden*, reducida a escrito el 9 de febrero de 2023, donde le ordenó a la representación legal de la joven Alverio Valle, notificar dentro de cuarenta y ocho (48) horas la moción presentada a la parte apelada, so pena de establecer una sanción de cincuenta dólares ($50.00).

Así las cosas, el 14 de marzo de 2023, el foro *a quo*, emitió una *Resolución*, reducida a escrito el 20 de marzo de 2023. Por medio de esta, indicó que, fue celebrada la *Vista Alimentos entre Parientes* a la que asistieron las partes asistidas de sus representantes legales. El foro primario explicó que, la representación legal de la parte apelante había presentado la PIPE en blanco y unos documentos que acreditaban que la joven Alverio Valle había culminado sus estudios de maestría. De igual manera, incluyó en la *Resolución* que, en la referida vista, la representación legal de la parte apelada argumentó que la parte apelante había incurrido en incuria puesto que, desde el 2017 no había promovido ninguna solicitud en el caso. Surge, además, que la representación legal del señor Alverio Domínguez entendía que la acción de alimentos había caducado puesto que, al momento de la vista, la joven Alverio Valle tenía 28 años, y que, toda deuda de pensión alimentaria había prescrito. Así como, que el señor Alverio Domínguez había cumplido a cabalidad un acuerdo de pensión alimentaria suscrito por las partes. Por otro lado, mediante la *Resolución*, el Tribunal de Primera Instancia nuevamente le ordenó a las partes a reunirse y dar cumplimiento a la *Orden* del 28 de enero de 2020. Igualmente, les ordenó presentar sus PIPE dentro de un término de diez (10) días. Añadió que, las partes tendrían hasta el 16 de mayo de 2023, para notificar si habían logrado un acuerdo, y

que esa fecha también era la fecha límite para presentar una solicitud de desistimiento o moción dispositiva. En cuanto a la joven Alverio Valle, el foro *a quo* le ordenó presentar en o antes del 10 de abril de 2023, los siguientes documentos: estados de cuentas bancarias y de tarjetas de crédito; planillas de contribución sobre ingresos o certificación negativa del Departamento de Hacienda; Formulario W-2 o Formulario 480.6B; Información de Incorporación del ente Mindmap, LLC., y toda la información sobre los ingresos recibidos por ella entre enero de 2017 y diciembre de 2019; copia del pasaporte y evidencia de los gastos de la PIPE.

El 16 de mayo de 2023, la parte apelada presentó la *Moci[ó]n en Solicitud se Desestime y por Consiguiente se Archive Solicitud Inmeritoria de Alimentos Procurada Tard[í]amente*. Por medio de esta, la parte apelada alegó que la joven Alverio Valle había incumplido reiteradamente con las órdenes del foro primario, y que, había fallado en demostrar su necesidad conforme a lo requerido en los procedimientos de alimentos entre parientes. Añadió que, la parte apelante había actuado en contra de sus propios actos y había incurrido en incuria. Por tanto, solicitó que se archivara la solicitud de alimentos y que se le impusieran sanciones por temeridad.

En su moción, el señor Alverio Domínguez explicó, además, que, previo a la solicitud de alimentos presentada por la parte apelante, se había mantenido cumpliendo con el pago de cuatrocientos dólares ($400.00) mensuales por concepto de alimentos, el pago del vehículo y de plan médico de la joven Alverio Valle, mientras esta culminaba sus estudios de bachillerato. Indicó que, en la solicitud presentada por la joven Alverio Valle esta había expuesto que sus circunstancias de estudiante cambiaban debido a que comenzaba la maestría en agosto de 2017 y sus gastos aumentaban. La parte apelada sostuvo que, el 8 de noviembre de 2019 el foro primario había emitido una resolución en la cual

expresó que, la reclamación de alimentos posgraduados conllevaba un análisis basado en consideraciones distintas a las que se hacen en los casos de bachillerato, y esbozó los requisitos que debía demostrar la alimentista para que sus progenitores financiaran sus estudios postgrado. Asimismo, argumentó que, posterior a reiteradas solicitudes de la parte apelada para que se cumpliera con un descubrimiento de prueba cursado, la joven Alverio Valle se cruzó de brazos, estudió su maestría y no realizó reclamo alguno hasta el mes de enero de 2023. Añadió que, la joven Alverio Valle incumplió en múltiples ocasiones con las órdenes del foro de primera instancia. Aseguró que, la falta de diligencia, de cumplimiento con las órdenes del tribunal, y el no producir ni contestar el descubrimiento de prueba cursado demostraban incuria por la parte apelante.

Mediante *Orden* emitida el 19 de mayo de 2023, el foro primario le ordenó a la parte apelante replicar dentro de un término de veinte (20) días a la moción de desestimación presentada por la parte apelada, so pena de desestimación.

La parte apelante presentó la *Moción Oposici[ó]n a Desestimaci[ó]n y Moci[ó]n Eliminatoria*[6] el 12 de junio de 2023.

El foro *a quo* el 21 de julio de 2023, emitió una *Orden* con relación a la *Moción Oposici[ó]n a Desestimaci[ó]n y Moci[ó]n Eliminatoria*, donde expresó lo siguiente: "Existe vista señalada. El elemento de prescripci[ó]n e incuria se evaluar[á] de acuerdo a la prueba que se presente."

El 4 de agosto de 2023, la parte apelante presentó la *Moci[ó]n en Cumplimiento de Orden*. En igual fecha presentó la PIPE.

Por otro lado, el 8 de agosto de 2023, el Tribunal de Primera Instancia emitió una *Resolución*, reducida a escrito el 30 de agosto

---

[6] Cabe señalar que, desconocemos el contenido de la referida moción, puesto que no fue incluida en el apéndice del recurso.

de 2023. Por medio de la aludida resolución, el foro *a quo* explicó que, el 10 de marzo de 2023, la parte apelante había presentado una PIPE en blanco. A tales efectos, el 14 de marzo de 2023, se le ordenó que presentara la PIPE cumplimentada en un término de diez (10) días, no obstante, la presentó el 4 de agosto de 2023. De la *Resolución* también surge que, la parte apelante tampoco cumplió con la orden del 14 de marzo de 2023, que dicho incumplimiento fue discutido en corte abierta en la *Vista de Seguimiento* celebrada el 8 de agosto de 2023, y que este no fue fundamentado ni justificado. Igualmente, el foro de primera instancia señaló vista en su fondo para el 29 de noviembre de 2023.

Subsiguientemente, el 15 de agosto de 2023, la parte apelada presentó la *Moci[ó]n en Solicitud de Honorarios por Temeridad y Desestimaci[ó]n.* En su moción, reiteró que, la parte apelante continuaba incumpliendo con las órdenes del Tribunal. Sostuvo que, la joven Alverio Valle no había puesto al Tribunal de Primera Instancia en posición de determinar la necesidad que esta alegaba tener, debido a que, no proveyó información que sustentara lo solicitado. De igual forma, solicitó la imposición de honorarios por temeridad.

El 17 de agosto de 2023, la parte apelante presentó la *Moci[ó]n Informativa y en Cumplimiento de Orden.* La anterior fue presentada con el propósito de notificar que había entregado a la parte apelada la correspondiente producción de documentos y el requerimiento de admisiones.

Posteriormente, el 14 de septiembre de 2023, la parte apelada presentó la *Urgente Moci[ó]n Reiterando Solicitud de Desestimaci[ó]n y Honorarios por Temeridad.* En esencia, reiteró que procedía que se desestimara la solicitud presentada por la parte apelante. Expresó que, nuevamente la parte apelante había incumplido con una orden

del Tribunal. Arguyó que, la solicitud de alimentos no procedía puesto que, la parte apelante nunca justificó necesidad real.

El 1 de noviembre de 2023, el Tribunal de Primera Instancia emitió una *Orden*, reducida a escrito el 2 de noviembre de 2023, mediante la cual le concedió a la parte apelante un término de diez (10) días para demostrar causa por la cual no debía aplicar al caso de epígrafe la doctrina de incuria y desestimar la solicitud de alimentos.

Así las cosas, el 21 de noviembre de 2023, la parte apelante presentó la *Moci[ó]n en Cumplimiento de Orden*. En apretada síntesis, la parte apelante arguyó que, no procedía la solicitud de desestimación presentada por la parte apelada.

La parte apelada presentó la *Urgent[í]sima Moci[ó]n Reafirmando Solicitud Desestimaci[ó]n y Honorarios por Temeridad* el 27 de noviembre de 2023.

El 27 de noviembre de 2023, el Tribunal de Primera Instancia emitió la *Resolución* cuya revisión nos ocupa, reducida a escrito el 30 de noviembre de 2023. En virtud de esta determinó lo siguiente:

> Luego de un minucioso análisis del expediente judicial y de haber señalado tres vistas, el tribunal concluye que la parte promovente ha incurrido en dejadez inexcusable, abandonando su causa de acción e inobservando la orden judicial de reunirse con la parte promovida en el año 2020. Procesalmente, además, ha dejado de cumplir con las órdenes del 14 de marzo de 2023 en cuanto a los documentos que debía someter en o antes del 10 de abril de 2023 al tribunal y la orden del 8 de agosto de 2023, a los fines de someter la prueba documental y testifical que fue estipulada con las otras partes en el caso.
>
> **No surge del expediente judicial causa justificada para sostener la conducta de la señorita Alverio que pueda excusar sus continuos incumplimientos. A tenor con la Regla 39.2 de Procedimiento Civil, el tribunal decreta la desestimación de la solicitud del 26 de julio de 2017 presentada por la joven Karla Alverio Valle**.

Inconforme, la parte apelante presentó la *Reconsideraci[ó]n de Resoluci[ó]n*. Argumentó que, antes de desestimar, el Tribunal de

Primera Instancia debía tomar otras medidas. Sostuvo que, del expediente no surgía ninguna orden previa de mostrar causa o sanciones económicas previo a desestimar. Aseguró haber cumplido con todas las órdenes del foro primario y haber entregado los documentos requeridos a la otra parte.

La parte apelada se opuso a la moción de reconsideración presentada por la parte apelante por medio de la *Moci[ó]n en Cumplimiento de Orden y en Solicitud se Mantenga la Resoluci[ó]n Dictada el 4 de diciembre de 2023*.

Finalmente, el foro apelado emitió *Resolución* en la cual dispuso lo siguiente:

> **Examinados los escritos de las partes, el tribunal declara No Ha Lugar la solicitud de Reconsideración presentada por la señora Alverio el 19 de diciembre de 2023, y se sostiene en su Resolución del 27 de noviembre de 2023.**

Aún inconforme, la parte apelante acudió ante este foro revisor y esgrimió el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al desestimar la demanda, sin celebrar vista, acogiendo unas alegaciones; y sin agotar los procesos establecidos.

Por otro lado, el señor Alverio Domínguez presentó la *Oposici[ó]n a Recurso de Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. *Deferencia Judicial*

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos. *Argüello v. Argüello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA*, 117 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778, *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022)[7].

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

## B. Alimentos entre parientes

En nuestro ordenamiento jurídico, los casos sobre alimentos de menores están revestidos del más alto interés público. El Tribunal Supremo de Puerto Rico ha manifestado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida y en la solidaridad familiar. Por tanto, nuestro más Alto Foro

---

[7] Véase también *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

ha resuelto que, en nuestra jurisdicción, los menores tienen un derecho fundamental a recibir alimentos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 265 (2019); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011). Más aún, el Tribunal Supremo de Puerto Rico ha reconocido que el derecho a reclamar alimentos constituye parte del derecho a la vida, protegido por la Constitución de Puerto Rico. Artículo II, Sec. 7, Const. E.L.A., LPRA, Tomo 1. *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 738 (2009); *Umpierre Matos v. Juelle, Mejías*, supra, pág. 566.

El derogado Código Civil de Puerto Rico[8], en su Art. 142[9] define los alimentos como "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia"[10]. De igual manera, los alimentos comprenden la educación e instrucción del alimentista, cuando este es menor de edad[11]. Nuestra más Alta Curia ha expresado que, la obligación de proveer alimentos es personal de cada uno de los progenitores, consecuentemente, debe ser satisfecha del propio peculio y de manera proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra, pág. 718.

Por su parte, el Art. 146 del Código Civil de 1930[12] respecto a la cuantía de los alimentos, disponía que esta "será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo"[13].

---

[8] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la solicitud de alimentos tuvo lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

[9] Equivalente al Art. 653 del Código Civil de 2020.

[10] 31 LPRA sec. 561.

[11] 31 LPRA sec. 561.

[12] Equivalente al Art. 671 del Código Civil de 2020.

[13] 31 LPRA sec. 565.

Al palio de nuestro marco doctrinario, para determinar la capacidad económica de cada alimentante, es preciso tomar en cuenta *todos* los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal y Económica (PIPE). *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406 (1993). El tribunal de primera instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. "Puede, al fijar la cuantía de la pensión, considerar aspectos tales como *el estilo de vida que lleva el alimentante, su capacidad para generar ingresos*, la naturaleza y cantidad de las propiedades con que cuenta, *la naturaleza de su empleo o profesión* y sus otras fuentes de ingreso." (Énfasis en el original). (Cita omitida). *Id.*, págs. 72-73.

Respecto a quien se encuentra legitimado para reclamar judicialmente pensiones alimentarias, el Tribunal Supremo resolvió que mientras los hijos sean menores de edad y no hayan sido emancipados, el progenitor que tenga la patria potestad puede reclamar el pago de pensiones a nombre de los hijos, siempre y cuando no estén prescritas, pues el padre o madre tienen respecto de sus hijos no emancipados el deber de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho y la acción para solicitar el pago de pensiones alimentarias es una de esas acciones. Sin embargo, una vez termina la patria potestad por cualquiera de las causas contempladas en la ley, esta facultad cesa y el alimentista queda legitimado para reclamar judicialmente la pensión. *Ríos v. Vidal*, 134 DPR 3 (1993).

La Alta Curia ha señalado que el hecho de que los hijos puedan comparecer a solicitar alimentos aun luego de alcanzar la mayoridad obedece a que la obligación de alimentarlos no cesa automáticamente porque estos hayan cumplido veintiún (21) años. *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 573 (2012);

*Toro Sotomayor v. Colón Cruz,* 176 DPR 528 (2009); *Key Nieves v. Oyola Nieves,* 116 DPR 261, 266 (1985). En otras palabras, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los padres, pues siempre subsistirá la obligación que emana del Art. 143 del Código Civil de Puerto Rico, 31 LPRA sec. 562, que atiende las necesidades alimentarias de parientes. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 573. De manera que, una vez establecida una pensión alimentaria, ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren. *Sosa Rodríguez v. Rivas Sariego,* 105 DPR 518, 523 (1976); *Rivera Medina v. Villafañe González,* 186 DPR 289, 293 (2012).

Cabe puntualizar que, respecto a las obligaciones de subsistencia luego de advenida la mayoridad el Código Civil de 2020 en el Art. 99 dispone lo siguiente:

Capítulo 425. La Mayoría de Edad

§ 5593. Obligaciones de subsistencia

La mayoría de edad no extingue inmediatamente las obligaciones de subsistencia ni las atenciones de previsión de los progenitores o de otros obligados a prestarlas en favor de quien adviene a la mayoridad:

(a) Si la ley dispone expresamente su extensión;

(b) si el beneficiado está sujeto a la patria potestad prorrogada de sus progenitores; o

(c) si el beneficiado no tiene recursos ni medios propios para su manutención, mientras subsisten las circunstancias por las que es acreedor de ellas.

Las atenciones de previsión incluyen, sin limitarlas a, los seguros de salud, de vida y de incapacidad, los planes de estudio y las garantías prestadas sobre obligaciones que subsisten luego de advenir el beneficiado a la mayoridad.

La persona que alegue la extinción de las obligaciones de subsistencia o las atenciones de previsión sobre quien adviene a la mayoridad, debe probarla.

En *Argüello v. Argüello*, 155 DPR 62, 71 (2001), el Alto Foro señaló que, se ha establecido ya que el deber del alimentante de proveer los medios necesarios para la educación de un hijo no termina, sin más, porque el hijo alcance la mayoría de edad. "Ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren". En los casos en que el menor ha comenzado los estudios universitarios mientras es menor de edad, nuestra última instancia judicial ha establecido que bajo circunstancias normales:

> ... al menos en cuanto a los estudios de bachillerato ... cuando un hijo "se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad". (Citas Omitidas.) *Key Nieves v. Oyola Nieves*, supra, pág. 266.

En consonancia con lo anterior, la Máxima Curia expresó en *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 575-576, que: "[...] sin perder de perspectiva que la pensión alimentaria que se otorga a favor de un menor de edad responde a este hecho y, además, que la pensión que se adjudica conforme al Art. 143 del Código Civil, *supra*, se rige por criterios diferentes, sostenemos que la pensión alimentaria no cesa automáticamente al momento de cumplir la mayoridad. De ser lo contrario, se crearía una situación sumamente tortuosa para los jóvenes involucrados en esa acción. No podemos avalar que arbitrariamente un alimentante suspenda su obligación de pagar una pensión alimentaria por el hecho de que el alimentista advenga a la mayoría de edad".

En resumen, se ha resuelto *jurisprudencialmente* que: "la pensión alimentaria no cesa automáticamente al momento en que el alimentista adviene a la mayoría de edad. Será deber del alimentante, si así lo desea, poner en conocimiento al tribunal de que sus hijos alimentistas están próximos a llegar a la mayoridad y su interés de ser relevado del pago de la pensión alimentaria. Es

decir, la pensión otorgada a un menor de edad continuará en vigor –aunque advenga a la mayoría de edad– hasta que no se realice el trámite procesal descrito anteriormente. La referida moción se le deberá notificar al alimentista, de modo que éste pueda comparecer dentro de ese mismo pleito –a nombre propio– y establecer que sus necesidades permanecen vigentes y que reúne los requisitos que le hacen acreedor de la pensión a pesar de que ya es mayor de edad". *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 576.

Particularmente, con relación a los *estudios postgraduados*, nuestra última instancia judicial ha dicho que ameritan una consideración especial y separada, que deberá resolverse caso a caso[14]. *Key Nieves v. Oyola Nieves*, supra, pág. 267. [15] Por economía procesal, según dijo en ese mismo caso, este tipo de alimentos puede reclamarse dentro del pleito original de divorcio entre los padres.[16] *Íd*, pág. 268.

Es pues, una norma bien establecida que un tribunal puede ordenar el pago de alimentos a un hijo mayor de edad que haya comenzado sus estudios universitarios durante su minoridad y demuestre que tiene necesidad de dicha ayuda. (Citas omitidas). *Key Nieves v. Oyola Nieves*, supra, pág. 267; *Argüello v. Argüello*, supra, pág. 72.

Entonces, solo restará que el tribunal, tomando en consideración las circunstancias particulares de cada caso, evalúe si procede relevar al padre alimentante de la obligación que se le había impuesto hasta ese momento. Es decir, una vez que se ha

---

[14] "[Quien] solicite 'alimentos' o asistencia económica para estudios 'postgraduados' deberá demostrar afirmativamente que es acreedor de tal asistencia económica mediante la actitud demostrada por los esfuerzos realizados, la aptitud manifestada para los estudios que desea proseguir a base de los resultados académicos obtenidos, y la razonabilidad del objetivo deseado. *Key Nieves v. Oyola Nieves*, supra, pág. 267.

[15] *Argüello v. Argüello*, supra, pág. 72.

[16] Véase también, *Ríos v. Vidal*, supra, pág. 12, donde se resuelve que la acción promovida por una madre o padre en representación de sus hijos ya mayores de edad, para reclamar pago de pensiones alimentarias, debe sujetarse a la oportuna intervención o sustitución del alimentista, quien es la parte realmente interesada.

puesto en conocimiento al tribunal de que un alimentista está próximo a llegar a la mayoridad, y este último, a su vez, ha informado que por su condición de estudiante aún necesita alimentos, el foro primario deberá calendarizar una vista evidenciaria para pasar juicio sobre los requerimientos de las partes. Por estas razones, será imperativo que el tribunal atienda con premura estos planteamientos para evitar un daño irreparable a cualquiera de las partes. *Íd.*

## C. *La doctrina de incuria*

En varias ocasiones nuestro Tribunal Supremo ha dispuesto que la doctrina de incuria se define como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". *Alonso Piñero v. UNDARE, Inc.*, 199 DPR 32, 53 (2017); *Molini Gronau v. Corp. PR Dif. Púb.*, 179 DPR 674, 687 (2010). Véase, además, *Aponte v. Srio. de Hacienda, ELA*, 125 DPR 610, 618 (1990). Esta doctrina proviene de la máxima que la equidad auxilia a quien se mantiene vigilante en el reclamo de sus derechos y no quien se duerme sobre la corriente sin mostrar excusas razonables para ello. *Alonso Piñero v. UNDARE, Inc.*, supra, págs. 53-54 citando a *Consejo de Titulares v. Ramos Vázquez*, 186 DPR 311 (2012). La reclamación tardía va en detrimento de la parte contraria, sobre todo cuando se tuvo amplia oportunidad de reclamar diligentemente sus derechos. Es un principio profundamente enraizado en la doctrina del derecho común angloamericano que el paso del tiempo puede impedir que un reclamante reciba el remedio que solicita ante una corte. En ese sentido, la doctrina de incuria establece que la inacción de una parte por un largo periodo de tiempo y la legítima confianza de la otra parte, impide que se provean los remedios solicitados mediante

reclamos tardíos. *Alonso Piñero v. UNDARE, Inc.,* supra, pág. 54; *Consejo de Titulares v. Ramos Vázquez,* supra, pág. 341.

Ahora bien, el Tribunal Supremo de Puerto Rico ha resuelto que esta doctrina no aplica automáticamente por el mero transcurso del tiempo. *Aponte v. Srio. de Hacienda,* supra.  En ese sentido, "cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares". *Pérez, Pellot v. JASAP,* 139 DPR 588, 599-600 (1995). Al analizarse las distintas situaciones, se debe considerar si existe alguna justificación para la demora, el perjuicio que esta acarrea y el efecto sobre intereses privados o públicos involucrados. *Comisión Ciudadanos v. GP Real Property,* 173 DPR 998 (2008); *Consejo de Titulares v. Ramos Vázquez,* supra, pág. 341.

Es preciso señalar, además, que la incuria aplica cuando no existe un término reglamentario o en ley para realizar determinada acción, pero también se ha aplicado cuando existe un término que no ha sido debidamente notificado. *Pueblo v. Valentín,* 135 DPR 245 (1994). De esa forma, ante la ausencia de un término reglamentario, se ha aplicado el criterio de "término razonable". *Id.* Véase *Buena Vista Dairy, Inc. v. JRT,* 94 DPR 624 (1967).  (Citas omitidas). *Consejo de Titulares v. Ramos Vázquez,* págs. 341-342.

Específicamente, la incuria "envuelve dos elementos, a saber: la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias". De igual forma, "hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia". Se deben considerar los méritos y las circunstancias del caso, pues como se colige de lo expuesto, esta doctrina está vinculada a la idea fundamental de la equidad. Es decir, al aplicarse esta doctrina, se apela a la razón y a la conciencia, ante la necesidad de encontrar y proveer soluciones justas. (Citas omitidas). *Íd.,* pág. 342.

Esbozada la norma jurídica, procedemos a aplicarla a los hechos del caso.

**III**

Previo a la discusión del señalamiento de error esbozado por la parte apelante, es necesario destacar que, la apelación presentada por esta es defectuosa. En específico, incumple con la Regla 16(E) del Reglamento de este Tribunal[17]. La precitada Regla, exige que, el apéndice de una apelación incluya:

[.....]

(E)  Apéndice

(d)  toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en el escrito de apelación, o que sean relevantes a éste;

(e)  cualquier otro documento que forme parte del expediente original en el Tribunal de Instancia y que pueda ser útil al Tribunal de Apelaciones a los fines de resolver la controversia.

De los hechos expuestos tanto en el recurso de apelación como en la oposición, surge que existen mociones y órdenes del Tribunal de Primera Instancia que no fueron incluidas en el apéndice del recurso, y que, eran necesarias para colocar a este foro revisor en mejor posición. El incumplimiento con las disposiciones reglamentarias sobre forma, contenido y presentación antes mencionado del recurso apelativo, de por sí, pudiera tener como consecuencia la desestimación del recurso[18].

A pesar de lo anterior, hemos decidido entrar en los méritos del recurso. Sin embargo, hacemos hincapié en que, la parte que comparece ante el Tribunal de Apelaciones, **tiene la obligación de perfeccionar su recurso según lo exige el Reglamento del Tribunal de Apelaciones**, para así colocar al foro apelativo en

---

[17] 4 LPRA Ap. XXII-B, R. 16(E).
[18] *Pueblo v. Valentín Rivera,* 197 DPR 636, 641 (2017).

posición de poder revisar al tribunal de instancia.[19] (*Énfasis suplido*).

En su recurso, la parte apelante sostiene que, el foro primario incidió al desestimar su reclamación, sin celebrar vista, y al acoger ciertas alegaciones sin agotar los procesos establecidos.

Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, la parte apelante presentó una solicitud de alimentos en julio de 2017[20] en contra del señor Alverio Domínguez. Según surge del expediente, en su solicitud, la joven Alverio Valle expresó que el motivo de esta se debía a que estaba próxima a comenzar estudios graduados. Luego de varios trámites procesales, innecesarios pormenorizar, el 18 de enero de 2020, la primera instancia judicial les ordenó a las partes llevar a cabo una reunión con el propósito de llegar a un acuerdo al respecto. Las partes no se reunieron, y no fue hasta enero de 2023 que la parte apelante presentó una moción[21] con el propósito de darle trámite a la aludida solicitud de alimentos. Es decir, el caso estuvo tres (3) años sin que la parte apelante le diera trámite alguno. A tales efectos, el foro de primera instancia desestimó la solicitud de alimentos presentada por la parte apelante bajo el fundamento de incuria.

Conforme el derecho expuesto la incuria ha sido definida como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad".[22] Esta doctrina está fundada en la creencia de que la equidad auxilia a la persona que

---

[19] *Morán v. Martí*, 165 DPR 356, 367 (2005).
[20] Dicha solicitud no forma parte del apéndice del recurso.
[21] La referida moción no fue acompañada al apéndice del recurso.
[22] *Alonso Piñero v. UNDARE, Inc.*, supra, pág. 53; *Molini Gronau v. Corp. PR Dif. Púb.*, supra, pág. 687. Véase, además, *Aponte v. Srio. de Hacienda, ELA*, supra, pág. 618.

se mantiene vigilante en el reclamo de sus derechos, y no quien se duerme sobre la corriente sin mostrar excusas razonables para ello.[23]

Al examinar el expediente pudimos constatar que, de ninguna forma surge que, la parte apelante hubiese colocado al foro de primera instancia en posición de resolver a su favor, a pesar de que esta ostentaba el peso de la prueba. De igual manera, lo que sí surge es que, la joven Alverio Valle por tres (3) años mantuvo el caso inactivo, es decir no fue diligente en promover su causa, tanto dentro de ese periodo como luego de la moción presentada en el 2023 al incumplir o cumplir tardíamente con las órdenes del foro *a quo*. Asimismo, no justificó su inacción y su incumplimiento con las órdenes del foro primario, a pesar de que este último en múltiples instancias le ordenó el cumplimiento de estas.

De acuerdo con lo anterior y ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto, no vemos razón para intervenir con la decisión del foro primario.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] *Alonso Piñero v. UNDARE, Inc.*, supra, págs. 53-54.